ISAAC GOODMAN *vs.* TOWN OF PROVINCETOWN.

Barnstable.   May 10, 1933. — June 28, 1933.

Present: RUGG, C.J., PIERCE, WAIT, FIELD, & LUMMUS, JJ.

*Municipal Corporations,* Liability in tort.  *Landlord and Tenant,* Defective way.  *Way,* Private.  *Negligence,* Of one owning or controlling real estate.

Adjoining one side of a wharf was a railroad trestle. The planking of the wharf abutted the ends of the sleepers upon the trestle, which were raised three or four inches above the planking. The planking was solid. There were holes between the sleepers. There were no lights on the wharf and no barrier or railing between the sleepers and the planking. At the other side of the wharf were some buildings, and a portion of the wharf between them and the trestle was used as a passageway in common by the tenants of the buildings. Such condition existed at a time when a town acquired title to the wharf and trestle under statutory authority to use the property as a wharf and public landing, at which time the tenants of the buildings became tenants at will of the town. Such condition existed unchanged some months later when one visiting the wharf at night on business with one of the tenants was injured by reason of his leg going into one of the holes between the sleepers. In an action of tort by the injured person against the town predicated, not on the statutory liability of the town for a defect in a public way under G. L. (Ter. Ed.) c. 84, but on the theory that the place where he was injured was a private way of which the defendant had control, it was *held,* assuming that

the defendant had notice of the condition of the wharf at the time when it acquired title and that the way was unsafe for use at night by reason of the holes between the sleepers, that

(1) The tenants of the defendant took the premises, including the way, in the condition in which they appeared to be when the tenancies began at the time of the defendant's acquisition of title, and the defendant owed no duty to them to erect barriers to guard or warn them against perils which made the use of the way dangerous if not lighted on dark nights;

(2) The defendant owed the plaintiff no greater duty to keep the premises safe than it owed to the tenant whom the plaintiff was visiting at the time of his injury;

(3) The plaintiff could not recover.

TORT. Writ dated February 7, 1929.

The action was tried in the Superior Court before *Walsh*, J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*J. D. W. Bodfish*, (*S. Markell & L. W. Black* with him,) for the plaintiff.

*T. Kelly*, for the defendant.

PIERCE, J. This is an action of tort to recover damages for personal injuries sustained by the plaintiff on certain premises owned and controlled by the defendant. The case was tried in the Superior Court to a jury. At the close of the evidence for the plaintiff the defendant rested and moved that a verdict be ordered in its favor. This motion was allowed and a verdict for the defendant was returned by the jury by order of the judge. To the allowance of this motion the plaintiff excepted. The case is before this court on exceptions relating to (1) "The exclusion of certain evidence offered by the plaintiff," and (2) "The allowance of the defendant's motion for a directed verdict." "The control of the premises by the defendant, town of Provincetown, was admitted by the defendant before any evidence was taken." The "bill of exceptions . . . contains all the evidence material to the issues raised."

The evidence warranted the jury in finding the facts which follow: Early in 1928, the defendant commenced to consider the advisability of acquiring title to a parcel of land located in said town of Provincetown, between Com-

mercial Street and the water of Provincetown harbor, with the wharf adjacent thereto known as "Railroad Wharf," then owned by the New York, New Haven and Hartford Railroad Company, and the operation of said property as a wharf and public landing. A town meeting was duly called and held on February 14, 1928. At this meeting a committee of three was appointed with directions to confer with the officials of the New York, New Haven and Hartford Railroad Company and report their recommendations at a special town meeting to be called not later than March 20, 1928. The committee duly made a report in writing at a town meeting duly called and held March 19, 1928, and the town "Voted: That the report of the Committee be accepted." At the same town meeting, under art. 2 of the warrant it was voted, "that the Selectmen be authorized to enter into negotiations with the New York, New Haven and Hartford Railroad Company to acquire the land between Commercial Street and the railroad wharf and also the wharf and that the Selectmen be instructed to procure any legislation that may be necessary to enable the town to hold and rent portion of said land and wharf and that the sum of $5,000 be raised and appropriated for the same."

St. 1928, c. 253, § 1, reads: "The town of Provincetown is hereby authorized to acquire by purchase or gift a parcel of land located in said town between Commercial street and the waters of Provincetown harbor, together with the wharf adjacent thereto known as Railroad wharf, now owned or leased by the New York, New Haven and Hartford Railroad Company, and said town may maintain and operate said property as a wharf and public landing"; § 3 provided for a submission of the act to the voters of Provincetown, and the manner and limitation of such submission. The act was accepted by the town at a town meeting duly called on May 21, 1928. The town acquired title to said property by deeds dated June 15, 1928, and June 29, 1928, respectively.

The premises acquired by the town by these deeds are on the southeasterly side of Commercial Street. The wharf, constructed on piles, extends straight out from the

parcel of land over the waters of Provincetown harbor. Going from Commercial Street onto the wharf toward the end there is a railroad track and a railroad trestle to the left. On the right there are a water pipe and the edge of the wharf, and beyond that some buildings, distant about eleven hundred feet from Commercial Street. The railroad trestle goes down to about twenty-five feet from the water end of the wharf. Hellers's building is the first building on the right; there are two other buildings next to Hellers's and the end of the wharf about one hundred fifty feet from Hellers's building is clear of buildings. The wharf is about twenty feet wide in front of Hellers's building out to where the railroad ties begin. The planking of the wharf butts against the railroad ties, so that the railroad trestle and the wharf are really two separate structures. The sleepers or ties of the railroad are raised about three or four inches higher than the planking of the wharf, which stops at the end of the sleepers. There were holes between the railroad ties, but no holes in the planking. That condition existed when the railroad stopped putting cars down the wharf nine years before the transfer of the title to the town in June, 1928, and there was no change between that date and November 25, 1928, when the accident to the plaintiff happened. There were no lights on the wharf and there was never anything done on the trestle. When the town took over the property in June, 1928, and before the date of the accident, November 25, 1928, there was no barrier or railing or protection of any kind between the portion of the wharf upon which one could walk or drive an automobile and the ties of the railroad track. At the time of the accident Heller Brothers was a tenant at will, hiring the building from the town. Some of the wharf between Heller Brothers' building and the railroad tracks was used in common with other tenants. The defendant admitted there was a common passageway down to this place of business and that the town had control of it.

The plaintiff, who lived in New York, was in the fish business and had been coming to Provincetown for nearly twenty-five years, about once or twice a year within that

period.   He testified that he "went down on the wharf at least once every time he went to Provincetown to see Heller Brothers or Rich's"; that he "knew the railroad trestle was there as he saw it every time he went down to Hellers's or Rich's"; that he "never took notice how the ends of the sleepers stuck up . . . [and] never went over to the edge to look down through the railroad track"; that he "always kept over on the right.   The wharf was quite wide between the building and the railroad track."   He further testified as follows:  He came to Provincetown two days before Sunday, November 25, 1928, and was down on the wharf in the daytime of that Sunday and saw the railroad trestle there as he had always seen it.   In the evening after dark, he was driven to the wharf by one Williams, in an automobile, to see Captain Enos at Heller Brothers on business.   Williams drove the automobile to a point in front of Heller Brothers, and then drove to the end of the wharf and turned around so that when the plaintiff came out the automobile would be headed toward the street.   He stopped the automobile about opposite the door of Hellers's nearest to the railroad track, and waited for the plaintiff.   When the plaintiff finished his business with Captain Enos, he came out and saw the automobile facing up the wharf toward Commercial Street; he came directly across from Hellers's and crossed in front of the automobile and walked around it to open the front door.   As he got in front of the automobile around on that side it was dark and he did not see any hole or opening or anything; he did not see any ties projecting up; he had never observed openings there and he did not know there were openings there; he was never warned by anybody that there were holes or openings there.   As he came by the front of the automobile he tried to open the front door, and as he stepped back, he went down a hole with his right foot.   He showed the same hole to Mrs. Bodfish the following October, he was positive it was the same hole because it was just where the automobile stood; it was in the same condition.   Mr. Williams helped him out of the hole, and his leg was broken in two places.

Assuming the excluded evidence would prove that the town had notice through its committee of the condition of the wharf before it acquired title to the premises, and that the selectmen in charge of the wharf made no change in it or repaired it from the time the town took it over on June 15, 1928, to the time of the accident on November 25, 1928, and further assuming that there was a hole between the ties which extended along the edge of the platform about sixteen inches and that the holes between the sleepers made the way covered by the planking unsafe to use in the night time, the entire evidence shows no right of action to the plaintiff against the defendant. The plaintiff disclaims any right of action against the defendant predicated upon a statutory liability to keep the way extending from Commercial Street over the pier or wharf in a reasonably safe condition for travel, and, on the assumption that the passageway is not a public way, did not give notice of his injury to the town. G. L. (Ter. Ed.) c. 84, § 18. Assuming, with the plaintiff, that the way was a private and not a public way, the evidence for the plaintiff shows that the way alleged to be defective was a common passageway used for many years before the defendant took title to the premises as a means of access to buildings leased to tenants. The testimony for the plaintiff further shows that the tenants of the buildings continued to occupy the buildings as tenants at will after the defendant took title, and that the condition of the common passageway, respecting the absence of railing or barrier to guard the way against holes between the ties of the trestle, was obvious when the tenancies began and until the accident. Upon the undisputed facts it is plain the tenants took the leased premises, including the common passageway, in the condition they were or appeared to be in when the tenancies began, and the defendant owed no duty to them to erect barriers to guard or warn them against perils on adjacent land which made the use of the passageway dangerous if not lighted on dark nights. The plaintiff, doing business with the tenant Heller Brothers, had no greater right to have the way kept safe for travel than the tenants had, and the defendant

owed no duty to the plaintiff greater than it owed to the tenants. *Blaufarb* v. *Drooker*, 251 Mass. 201. *Caruso* v. *Lebowich*, 251 Mass. 477.

*Exceptions overruled.*