D. N. KELLEY & SON, INC., & others *vs.* SELECTMEN OF FAIRHAVEN.

Bristol.   April 9, 1936. — June 29, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Mandamus. Municipal Corporations,* Lease of municipal property, Wharf. *Wharf. Fairhaven. Statute,* Construction. *Evidence,* Relevancy.

Upon a report by a single justice of this court to the full court of a mandamus proceeding on the pleadings and facts found, no question of the exercise of discretion is involved, and the only question presented is, whether as matter of law the writ should issue.

Mandamus lies by taxpayers of a town against its selectmen to restrain their unlawful leasing of the town's property.

The town of Fairhaven through its selectmen might lease to private persons for profit parts of the town's public wharf, acquired under St. 1926, c. 43, and not needed for public use.

Powers, plainly granted to the town of Fairhaven by St. 1926, c. 43, as finally enacted, could not be controlled by evidence of the first draft of the statute, its form as originally passed, and the Governor's recommendation for its amendment; nor by evidence of a report of the town's selectmen and of an article in the warrant for a town meeting preceding final enactment of the statute and relating to action proposed to be taken by the town thereunder.

On a question whether parts of a public wharf were not needed for public use and so legally could be let to private persons, evidence was admissible to show the revenue derived from private use by lessees and the amount of taxes paid by a lessee.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Bristol on September 4, 1935.

Facts found by an auditor were found by *Pierce*, J., who thereupon reported the case for determination by the full court.

*M. R. Brownell*, for the petitioners.

*T. F. O'Brien*, for an intervener.

*C. Mitchell*, for the respondents, submitted a brief.

RUGG, C.J. This is a petition for a writ of mandamus. The petitioners are two corporations and two residents of the town of Fairhaven, all being taxpayers in that town. The object of the petition is to require the respondents to cancel existing leases to Casey Boat Building Company of parts of wharf property owned by the town and to refrain from leasing another portion of the wharf and for further relief. The Casey Boat Building Company has been allowed to intervene.

The facts have been found by the single justice to be as stated in the report of an auditor to whom the case was referred. So far as material to the grounds of this decision those facts are in substance as follows: It was provided by St. 1926, c. 43, § 1, that the town of Fairhaven (hereafter called the town) "may purchase . . . or may take by eminent domain . . . the wharf property in said town known as Union wharf, and may maintain and operate the same as a wharf." Pursuant to this authority the town, in March, 1926, purchased the wharf property. Its total area is about three acres and twenty-three square rods. The town by its selectmen leased to the intervener (1) one part of the wharf property containing about one hundred fifty-four square rods, termed parcel "A," and (2) an indentation or basin covered with water on the southerly side of the wharf near its westerly end containing about seventy-eight and sixty-three one hundredths rods, termed parcel "B," and it is proposed to lease to the intervener

another part of the wharf lying between the other two leased parcels containing about sixty-one square rods and termed parcel "C." The intervener is a private business corporation engaged in the business of repairing yachts and boats on the leased parcels, and for that purpose owns and maintains buildings thereon. Since the purchase of the wharf by the town, parcel "A" has been occupied by the intervener under successive leases, the latest one being for three years from April 1, 1934, at a yearly rental of $500. Just previous to the purchase by the town, the wharf was not extensively used and it "had fallen into disuse." When the intervener first took over parcel "A" it was in a very rough state. After the intervener took it over, it cleared off the stones and boulders from the short piece of beach, dredged out in front of the beach and filled in the land, including parcel "C," to a level with the land fronting on Water Street. Since 1880 at least, this parcel had been low and wet. There was a pond in it, in which grew flags (cat-o'-nine-tails) which were used in coopering. Before the beach was cleared by the intervener, boats could not be pulled thereon by reason of stones and boulders. This beach is necessary to it in launching yachts. The beach is not sandy but is rough and not suitable for bathing purposes. In March, 1935, a lease to the intervener was made of parcel "B" for the term of one year at a rental of $100. In it the town reserved the right of way for fishermen. Before the present petition was brought negotiations were had for leasing parcel "C" to the intervener for a term to expire in April, 1937, at a yearly rental of $300. Other parts of the wharf property are leased to several different tenants, including fishermen, for diverse uses. The buildings on these parcels are owned by the tenants. One is leased for a garage, another for a sail loft, and another to a fish company. Some of these buildings are not now occupied. The town uses a lot on the wharf for its sewer department. "Less than one sixth of the wharf is used, by the public. Of late boating and yachting seem to be increasing. At the present time the unleased part of the wharf and the westerly end of the basin (which is the deepest part) are

mostly used by fishermen, and only two are tieing up regularly. About one third of the deepest part of the Basin is reserved for fishermen . . . . There is room for ten to fifteen boats to tie up." It does not appear what buildings were on the wharf at the time of its purchase by the town in 1926, nor what buildings have been erected since. A considerable amount has been paid annually by the intervener in taxes on buildings and machinery and on boats in storage on the leased parcel "A." During the terms of the present selectmen no demand or request has been made to them or brought to their attention for use or space, other than what is used, and no one has been refused or denied use of the wharf or space thereon. No demand or request has been made to the wharfinger since taking office early in the year 1935 for more space, and no one has been denied the use of the wharf. Further specific findings of the auditor are these:

"1. That the buildings erected on the wharf by lessees do not interfere with access to and egress from the end thereof or with the public use thereof.

"2. That the principal use made of the docking facilities is by fishermen.

"3. That at present only about one sixth of the docking facilities outside of the part leased is being used by the public.

"4. That the town has no occasion for the time being for the use for wharf purposes of any more of the wharf than it is now using.

"5. That there is no occasion or present demand by fishermen or the public for any more of the wharf than is now being used by them.

"6. That the short piece of beach is not desirable for swimming or bathing.

"7. None of the lessees mentioned, except the intervener, occupy under their leases any of the water frontage of the wharf, and

"8. That the town has no occasion for the time being for the use of any more of the wharf property than it is now using."

The case was reported by the single justice upon the pleadings and the report of the auditor for the determination of the full court.  On a report in this form no exercise of discretion is involved.  The question to be decided is whether upon the pleadings and the facts the writ of mandamus ought to issue as matter of law.  *School Committee of Lowell* v. *Mayor of Lowell*, 265 Mass. 353, 354, and cases cited.  *Cochran* v. *Roemer*, 287 Mass. 500, 502.  *Clancy* v. *Wallace*, 288 Mass. 557, 559.

The petitioners may maintain this proceeding.  It is brought for the vindication of a public right and its object is to procure the enforcement of a public duty, and no other remedy is open.  *Brooks* v. *Secretary of the Commonwealth*, 257 Mass. 91, 93, and cases there collected and reviewed.  The principle of cases like *Warner* v. *Mayor of Taunton*, 253 Mass. 116, to the effect that invasion of a common or public right affecting all persons alike and not causing special or peculiar damage to anyone does not afford a cause of action to an individual, does not govern the case at bar.  *Tuckerman* v. *Moynihan*, 282 Mass. 562, 569.

The contention of the petitioners is that the town is strictly limited by the statute to the maintenance and operation of the property in question as a wharf and that it has no legal right to lease any part of it for private commercial uses.  It has not been argued that the acquisition of the wharf by the town was not lawful nor for a public purpose.  Under legislative authority money of the town might be appropriated for the purchase.  *Attorney General* v. *Tarr*, 148 Mass. 309, 317–318.  *Goodman* v. *Provincetown*, 283 Mass. 457.  The terms of the statute and the facts reported by the auditor indicate that Union Wharf constituted a unit of property.  It is. clear that property cannot be acquired by the expenditure of public money ostensibly for a public use and then diverted to a private use.  *Salisbury Land & Improvement Co.* v. *Commonwealth*, 215 Mass. 371, 377.  It has been held that, where land is held by a town for public purposes and at a particular time there is no public purpose for which it is needed or could appro-

priately be devoted, it may be let for private uses. It was said with reference to town land laid out into house lots: "The defendant then found itself in possession of real estate more and other than what was required for the then present needs of the town. It was in the situation in which the town of Quincy was when its city hall was larger than was required for the time being for use as such, and when it let for profit the unused part of the building for business purposes (*French* v. *Quincy,* 3 Allen, 9); in the condition in which the city of New Bedford was when it let for profits parts of its city hall under like circumstances (*Worden* v. *New Bedford,* 131 Mass. 23). In each of these two cases the defendant was held to stand in the position of a private owner. . . . We see nothing *ultra vires* in the acts of the defendant. It either could allow the property to remain unused or it could let the same or any part thereof for profit." *Davis* v. *Rockport,* 213 Mass. 279, 282–283. It frequently has been decided that parts of city and town halls not needed for the public at the time may be leased. *Wheelock* v. *Lowell,* 196 Mass. 220, 225. *Oliver* v. *Worcester,* 102 Mass. 489. *Little* v. *Holyoke,* 177 Mass. 114. *Wood* v. *Oxford,* 290 Mass. 388. In *Murphy* v. *Commonwealth,* 187 Mass. 361, 375, with reference to the contention that a lease of a beach for hotel purposes could not be made by the town of Nahant, occurs this statement: "we think that a town may lease for any legitimate purpose land of which it is seised." *Wright* v. *Walcott,* 238 Mass. 432, 436.

The facts already narrated bring the case at bar within the principle of the group of decisions last cited. It is manifest that the leases here assailed have not interfered with the use of the wharf by any of the public or for any public purpose. No one has been excluded from landing on, embarking from, or mooring at the wharf, or been deprived of any use of it. This conclusion does not impair in any degree the settled principle that public money or public property cannot rightly be given over to private uses. *Lowell* v. *Boston,* 111 Mass. 454. *Mead* v. *Acton,* 139 Mass. 341. *Salisbury Land & Improvement Co.* v. *Commonwealth,* 215 Mass. 371. *Opinion of the Justices,*

204 Mass. 607, 610. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50. This opinion does not rest upon G. L. (Ter. Ed.) c. 88, § 14.

The petitioners offered evidence to show that the petition for the enactment of St. 1926, c. 43, and the accompanying bill contained words empowering the town to "lease said property in whole or in part for any purpose"; that, after the bill was laid before the Governor for his approval, it was returned with his recommendation that those words be struck out and that the bill after having been thus amended was enacted and became a law. This evidence was rightly excluded. *Allen* v. *Commissioner of Corporations & Taxation,* 272 Mass. 502, 508, and cases cited. The words of the statute as enacted are plain and need no elucidation as to their meaning. The leasing shown by the record and assailed in this proceeding was merely incidental to the main purpose for which the wharf was acquired and in no way has interfered with that purpose. *Wheelock* v. *Lowell,* 196 Mass. 220, 224.

The report of the selectmen and the article in the warrant for the town meeting just prior to the passage of the statute were rightly excluded. The wharf was acquired for a public purpose as already shown. The proffered evidence did not affect that public purpose. It has not been narrowed or restricted by the acts of which complaint is here made. There was no error in the admission of evidence showing the revenue derived from the use of the wharf or in taxes paid by the intervener. These facts bore on the issues involved in the petition. All the contentions presented by the petitioners have been considered but need not be further discussed. No reversible error appears on the record.

*Petition dismissed.*