DOMENICK FORGIONE *vs.* FRANKINI CONSTRUCTION COMPANY.

Suffolk.   November 6, 1940. — January 3, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Negligence,* One owning or controlling real estate.

Even if it be assumed that one, on premises seeking work from a sub-
contractor constructing reinforced concrete caissons for the founda-
tion of a building, was a business invitee of the general contractor,
the general contractor was under no duty to warn him of risks in-
cident to the obvious condition of the premises and was not liable for
injuries sustained when he fell into a straw covered hole containing a
caisson.

TORT.   Writ in the Superior Court, dated June 8, 1937.

After ordering a verdict for the defendant, *Walsh,* J.,
reported the case.

*G. J. Tauro,* for the plaintiff, submitted a brief.

*T. H. Mahony,* for the defendant.

QUA, J.   In November, 1936, the defendant had a general
contract with the Ford Motor Company to construct for
that company an extension to a building in Somerville upon
an area about one hundred forty yards long and one hun-
dred ten yards wide.   The defendant had entered into
a contract with Louis Covino and Son Foundation Com-
pany, a partnership, to furnish all labor and material to com-
plete the "caissons" necessary for the foundation.   Accord-
ing to the plaintiff's testimony, on the morning of November
23 the plaintiff went to the scene of the work with one Man-
zoli and asked Louis Covino, a member of the partnership,
for a job.   Covino told the plaintiff and Manzoli to return
at half past twelve.   They returned at noon and again saw
Covino "some 400–500 feet inside the gates."   Covino told
Manzoli to go to work and told the plaintiff to "wait a while"
and he, Covino, "would let . . . [the plaintiff] know."
The plaintiff started to leave the premises, and on his way
out "tripped into" one of the holes dug for a foundation

"caisson" and was injured by an iron rod which projected upward from the concrete "caisson" that was in the hole. Although there was evidence that on the day of the accident the defendant had on the job a general superintendent with "men," there is no evidence as to what, if any, work was actually being done at that time aside from the foundation work being carried on by the Covino firm.

If we assume, without deciding, that the defendant as general contractor had control of the premises, and that a direction to the plaintiff by Louis Covino, a subcontractor laying the foundations, to return at half past twelve in order to ascertain whether the subcontractors would give the plaintiff work was such an invitation as to place the plaintiff at the time of the accident in the position of a business invitee of the defendant general contractor, nevertheless we are of the opinion that there was no evidence for the jury tending to show that the defendant was negligent, and that on this ground the jury were rightly directed to find in its favor.

The report contains, in the form of a categorical statement of fact, a description of the condition of the premises at the time of the accident and of the work then being done by the Covino firm. From this it appears that holes were dug in the ground from two and one half to three feet in diameter and from twelve to twenty feet in depth; that the earth excavated was piled around the holes; that frames were placed in the holes and concrete was poured in to a level of three and one half to four feet below the surface of the ground; that into each of the concrete "caissons" thus formed were inserted four iron reinforcing rods or dowels, the greater portions of which were firmly embedded in the concrete, leaving the remainders projecting upward to a height of about two feet above the ground level; that these "caissons" were to receive the pillars which were to support the building above ground; and that the work was so laid out that the "caissons" were about twenty-one feet apart in all directions. There was evidence that after being poured the "caissons" were covered below the surface of the ground with hay or straw to prevent freezing; that above the level of the ground planks or boards were laid upon the hay or

straw to keep it from blowing; that on the day of the accident most of the "caissons," but not all of them, were covered; and that "no considerable quantity" of hay or straw extended above the ground surface.

The plaintiff himself testified that he saw men digging holes and pouring concrete in them; that he saw "caissons" there and knew iron rods were put in them; that he saw people working around there; that he saw some holes covered with straw and some with boards; that he did not see any rods sticking above the ground; that there was straw "all over the ground"; that he was looking out for holes but did not see any; that he did not see the hole in which he fell; that it was covered with straw; that he knew there were "caissons" on the premises and holes into which they were poured; and that he was several hundred feet from the gate when the accident happened.

In spite of some seeming contradictions in the plaintiff's own testimony, and whatever a jury might have thought of them, there is enough in the facts stated in the report as true, taken with the uncontradicted portions of the plaintiff's testimony, to show beyond peradventure that the general condition of the premises must have been obvious to any person of average intelligence who should visit them in the day time. Whether or not the plaintiff actually saw any holes, he knew that holes had been dug for the "caissons," and that there might be holes beneath the hay or straw. One who enters upon premises where construction is going on must expect to encounter the conditions and risks that naturally result from the manner in which the work is openly and visibly being performed. He cannot rely upon barriers and safeguards which he might reasonably expect to find in a completed building, but which it is impossible or impracticable to maintain at various stages of construction. The defendant was under no obligation to change the method of doing the work. It was under no obligation to warn the plaintiff of that which was self-evident. So far as appears there was no wrought path or designated course such as might convey to the plaintiff some representation or assurance of safety. He chose his own course through an

area where the work consisted of making holes and partially filling them with concrete. The defendant violated no duty of care that it may have owed to the plaintiff. The case is within the authority of *Beique* v. *Hosmer,* 169 Mass. 541; *Eisner* v. *Horton,* 200 Mass. 507; *Johnson* v. *H. P. Cummings Construction Co.* 201 Mass. 477; *Healy* v. *Gilchrist Co.* 205 Mass. 393; *Gainey* v. *Peabody,* 213 Mass. 229, 231; *Galli* v. *Drapeau,* 216 Mass. 144, 146; *Noonan* v. *Foley,* 217 Mass. 566; *Cole* v. *L. D. Willcutt & Sons Co.* 218 Mass. 71, 72, 73; *Morrissey* v. *Boston & Maine Railroad,* 230 Mass. 171, 175–176; and *Favereau* v. *Gabele,* 262 Mass. 118.

*Judgment for the defendant on the verdict.*