ALBINO M. PEREIRA *vs.* GLOUCESTER COMMUNITY PIER
ASSOCIATION, INC.

Essex. May 11, 1945. — June 5, 1945.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & WILKINS, JJ.

*Landlord and Tenant.* Landlord's liability to tenant or his family or his
invitee, Fish pier. *Negligence,* Invited person, Licensee, Fish pier.

A visitor to a fish pier injured there through slipping on a foreign sub-
stance could not hold one in control of the pier liable on the basis of
any rights derived by the visitor from a tenant of a store on the pier
with whom he had done business, where it did not appear that the
substance had come upon the pier after the tenant's tenancy began
or that the tenant had any rights in the part of the pier where the
accident occurred.

The captain of a fishing vessel, who, after he had unloaded his catch
at the store of one of the tenants on a fish pier and had taken on a
supply of ice from another tenant, had had no further business with the
tenants and, pending the departure of the vessel on another voyage,
had tied it up at another part of the pier for his own convenience and
without payment or economic or business benefit to the person in
control of the pier, was not a business visitor while on the pier on his
way to the vessel, but was at most a mere licensee not entitled to hold
the person in control liable for alleged negligence respecting a foreign
substance on which he slipped and fell.

TORT for personal injuries alleged to have resulted from
the defendant's negligence. Writ in the Superior Court
dated December 10, 1942.

The action was tried before *Beaudreau,* J. The jury found
specially that the defendant was not "a public charitable
corporation" and returned a general verdict for the plain-
tiff. The defendant alleged exceptions.

*E. J. Garity,* for the defendant.

*M. I. Bernstein,* for the plaintiff.

RONAN, J. The department of public works, acting for
and in behalf of the Commonwealth, was authorized by
various acts of the Legislature [1] to construct a fish pier and

---

[1] St. 1931, c. 311. St. 1932, c. 184. St. 1934, c. 244. St. 1936, c. 303.
St. 1937, c. 29. St. 1941, c. 580.

buildings thereon for the promotion of the fish industry and the commercial facilities of the city of Gloucester. The city furnished the site and laid out and constructed a highway suitable for heavy trucking from the pier to an existing highway. The Commonwealth expended more than a million dollars in constructing the pier, erecting two buildings and equipping one of them with the necessary machinery to manufacture ice and to maintain cold storage.

The defendant was organized under G. L. (Ter. Ed.) c. 180 for the purpose of managing the pier without profit and in such manner that the property should be made available to fishermen, fish dealers and the fishing industry generally, subject to such regulations as may be contained in its lease and also such as it may deem necessary. The membership of the defendant corporation is confined to those persons who from time to time are the city treasurer, the city auditor, and members of the municipal council, St. 1936, c. 303. St. 1937, c. 29. The Commonwealth leased the pier to the defendant at an annual rental of $20,000, and the defendant executed and recorded a declaration of trust to the effect that it held its interests under the lease for the benefit of all persons engaged in the fishing industry and without profit to the defendant and its members. The defendant has no stockholders. No dividends are declared. It has only one employee. He is manager of the pier. The defendant has been in control of the pier and the buildings thereon under its lease since November, 1938.

The pier is approximately one thousand feet long and three hundred feet wide. It has two buildings, one comprising eight stores for fish dealers and the other an ice manufacturing and cold storage plant. The incoming vessels go to the northerly side of the pier in front of the store of the dealer who has purchased the catch, and after unloading the fish the vessel is moved away from the front of the stores so that other vessels may discharge their cargoes. After a vessel is unloaded, it may proceed to the ice plant and take on a supply of ice, or it may sail to some other wharf and secure materials and supplies for its next trip.

The plaintiff, the captain and part owner of the "Portu-

gal," arrived at the pier on August 14, 1942, and after the vessel was unloaded he moved it to the ice plant where he took on a supply of ice on August 15, 1942.   He then tied up the vessel at the easterly end of the pier preparatory to sailing on the night of August 17, 1942.   He arrived at the pier about 8:30 o'clock on that evening, having delayed the sailing on account of a rainstorm and squally weather.   He stepped upon the caplog and then stepped down on a stringer, which was eight inches wide and was the top of a bumper protecting the pier;  and while attempting to reach the rigging to climb down to the vessel, his foot slipped on the stringer and he fell against the rail of the vessel and into the water.   It could be found that he slipped upon a patch of bituminous macadam similar to that used in surfacing the roadway of the pier before the defendant took possession under its lease.   The jury returned a verdict for the plaintiff.   The defendant excepted to the denial of a motion for a directed verdict and argues upon various grounds that it was error to deny the motion.

The plaintiff contends that he was a business visitor of the defendant at the time of the accident and that his injuries were caused by the negligence of the defendant. One who enters the business premises of another, at the express or implied invitation of a tenant, to transact business with the tenant, and is injured upon that part of the premises over which the tenant has a right to pass and which is in the control of the landlord, may recover against the landlord if the injuries were caused by a breach of duty owed to the tenant by the landlord. *Feeley* v. *Doyle*, 222, Mass. 155.   *Cushing* v. *Jolles*, 292 Mass. 72.   *Cleary* v. *Union Realty Co.* 300 Mass. 312.   *Diamond* v. *Simcovitz*, 310 Mass. 150.   But the landlord performs his obligation to the tenant if he uses reasonable care to keep the common passageways in as safe a condition as they were in or appeared to be in at the time of the letting.   Here there was no evidence that the bituminous macadam had been placed upon the stringer after the tenancy of the fish dealer who purchased the catch or of the ice plant began.   In the next place, it is not shown that either of these tenants had any

rights in the area in which the plaintiff was injured. The plaintiff cannot fasten any liability upon the defendant through any rights derived by him from either of these tenants. *Story* v. *Lyon Realty Corp.* 308 Mass. 66. *Bacon* v. *Jaques,* 312 Mass. 371. *Sneckner* v. *Feingold,* 314 Mass. 613. *Sullivan* v. *Belding,* 315 Mass. 701.

The plaintiff, upon his arrival at the pier with a cargo of fish and until his departure from the ice plant on the next day, was engaged in the transaction of business with the tenants and was undoubtedly a business visitor of these tenants. When he left the ice plant he had no further business to transact at the pier. The defendant's manager had requested the storekeepers to have the vessels move to the easterly end of the pier or to go to some other wharf after they were unloaded so as not to block the entrance to the stores. The plaintiff testified that he had always moved his vessel away from the stores after the cargo was discharged, that he then tied up the vessel at the easterly end of the pier where at times it remained for two or three days before starting upon another fishing trip, and that he never paid anything for tying the vessel there as "it was all free." The evidence was sufficient to show that the plaintiff had been permitted to make this use of the pier, especially when considered with reference to the purposes for which the pier had been constructed and the broad powers given to the defendant for the accomplishment of these purposes. The question, however, is whether he was a business visitor of the defendant in making this use of the pier. The stay of the vessel at the pier was solely for the convenience, benefit and accommodation of the plaintiff. The defendant gained no economic benefit by permitting the vessel to be tied up at the pier. The situation in this respect so far as the defendant was concerned was the same as if the plaintiff had used some other wharf for this purpose. There was no mutuality of interest between the plaintiff and the defendant arising out of the stay of the vessel at the pier, and no benefit of a business or pecuniary nature is shown to have accrued therefrom to the defendant. The plaintiff paid nothing for the privilege accorded him, and the evi-

dence does not warrant a finding that the defendant, either directly or indirectly, acquired any economic benefit or financial gain by the exercise of this privilege by the plaintiff or that the defendant had any interest as to where the vessel should be tied up provided it did not block the entrance to the tenants' places of business.   One coming upon premises as a business visitor becomes a licensee if he continues, after his business is concluded, to remain on the land solely for his own personal benefit.   *Heinlein* v. *Boston & Providence Railroad,* 147 Mass. 136.   *Wilkie* v. *Randolph Trust Co.* 316 Mass. 267.   The status of the plaintiff at the time of the accident was no higher than that of a licensee, and he took the premises as he found them.   *Metcalfe* v. *Cunard Steamship Co.* 147 Mass. 66.   *Reardon* v. *Thompson,* 149 Mass. 267.   *Plummer* v. *Dill,* 156 Mass. 426.   *McCarvell* v. *Sawyer,* 173 Mass. 540.   *Norris* v. *Hugh Nawn Contracting Co.* 206 Mass. 58.   *Freeman* v. *United Fruit Co.* 223 Mass. 300.   *Lanstein* v. *Acme White Lead & Color Works,* 285 Mass. 328.   *Brosnan* v. *Koufman,* 294 Mass. 495.   *Colbert* v. *Ricker,* 314 Mass. 138.

The case is distinguishable from *Silva* v. *Henry & Close Co.* 279 Mass. 334, where the owner of a fish pier had impliedly invited laborers seeking employment to go upon the pier as it was necessary for the tenants to have them for the unloading of vessels.   Here all the business that the plaintiff had with the tenants had been completed, and thereafter the presence of the vessel at the end of the pier was not connected with any business of the tenants or of the defendant.

Although the plaintiff gave written notice of the time, place and cause of the accident, the case was tried solely on the theory that he was a business visitor.   There was no evidence that the plaintiff at the time of his injury was a traveller on a public way or that the accident was caused by the breach of any duty owed to the plaintiff as a member of the public.   See *Nichols* v. *Boston,* 98 Mass. 39; *Commercial Wharf Corp.* v. *Boston,* 208 Mass. 482; *Boston Fish Market Corp.* v. *Boston,* 224 Mass. 31; *Goodman* v. *Provincetown,* 283 Mass. 457; *D. N. Kelley & Son, Inc.* v. *Selectmen*

*of Fairhaven,* 294 Mass. 570; *Cape Cod Steamship Co.* v. *Selectmen of Provincetown,* 295 Mass. 65.

*Exceptions sustained.*
*Judgment for the defendant.*