WILLIAM HAYES *vs.* BOSTON FISH MARKET CORPORATION.

Suffolk.    March 4, 1946. — May 13, 1946.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

*Negligence,* Invited person, Fish pier, Slippery substance, Contributory.

A member of the crew of a fishing vessel, whose employer was a sublessee of a store on a fish pier and paid wharfage for the right to unload vessels, properly might be found to have been an invitee on the pier while attempting to go from the pier aboard his vessel as it was about to sail after being unloaded at the pier.

Evidence warranted a finding of negligence of the proprietor of a fish pier toward an invitee on the pier who, as he was starting to descend a ladder to a fishing vessel lying at the pier, fell off the pier and was injured when his foot slipped in fish slime which had been deposited on the pier near the ladder during the unloading of the vessel and had been left there for over an hour after the unloading was finished.

A finding of contributory negligence on the part of one who fell off a
    fish pier and was injured when his foot slipped on fish slime on the
    pier as he was about to descend a ladder from the pier to a vessel
    lying there was not required by the evidence, although he had noticed
    the presence of the slime.

TORT. Writ in the Superior Court dated November 4,
1943.

The action was tried before *Collins*, J., who reported it
following a verdict for the plaintiff.

*H. C. Thompson*, for the defendant.

*H. Kisloff*, for the plaintiff.

LUMMUS, J.    This is an action of tort, based upon com-
mon law principles of negligence, brought by an experienced
fisherman, about sixty years old, a member of the crew of
the fishing trawler "Thomas Whalen," to recover for per-
sonal injuries received while leaving a pier operated by the
defendant, in an attempt to board another vessel, the "Co-
hasset," owned by the plaintiff's employer, which was lying
at the pier, and from the "Cohasset" to board the "Thomas
Whalen," which was lying outside the "Cohasset." The
"Cohasset" had been unloaded on the morning of the day
of the injury, November 27, 1941, and the "Thomas Whalen"
had been unloaded the day before. The plaintiff's employer
was the sublessee of one of the forty-five stores on the pier,
and paid rent, and also wharfage for the right to unload
vessels. By rules in force at the pier the "Thomas Whalen"
was to sail at two o'clock in the afternoon on November 27,
1941.

Along the edge of the wharf and above its floor was a cap
log a foot square. Above the cap log and fastened to it at
the place where the "Cohasset" lay was a horizontal iron
bar called a dog, intended to afford a grip for a person pass-
ing from the wharf over the cap log to a steel ladder the top
rung of which was six inches or a foot below the bottom of
the cap log. By that ladder a person could descend to the
deck of a vessel lying at the wharf.

When fish are unloaded and weighed, scales are placed
on the wharf close to the cap log, and the fish are hoisted
out of the vessel in pails over the cap log and into the scales.

In this process a deposit of fish slime on the cap log and the floor near it is inevitable. On the day in question the defendant had in its employ three or more cleaners, one of whom cleaned the cap log near the dog in question early in the morning. Soon afterwards the unloading of the "Cohasset" began, and it ended before one o'clock in the afternoon. In answering interrogatories the defendant stated that the cap log is "washed down every morning and when a boat is unloaded at any time during day." An officer of the defendant testified that "all vessels dirty up the wharf when they are unloading," and that the cleaners "wait for a vessel to finish unloading before they would begin to clean."

Before the hour of the injury, the plaintiff had been ashore to make some purchases, and had drunk some whiskey, but there was no evidence that he was under its influence. He arrived at the pier a little after two o'clock in the afternoon, intending to board the "Thomas Whalen," which was due to sail at once. He had to board the "Cohasset" first. He noticed that the cap log for a number of feet on each side of the dog was covered with fish slime. He had descended the ladder many times before. On this occasion a shipmate named Squires preceded him across the cap log and down the ladder, while another, a young man named Parrot, escaped the slime by jumping from a clean part of the cap log to the boat deck of the "Cohasset," a feat which the plaintiff thought too difficult for him. The plaintiff grasped the dog with his right hand. As to where he put his left foot, his testimony was conflicting. At first he said he put it on the cap log, which might prevent the soiling of his clothes with the slime. But on cross-examination he said that his left foot remained on the floor of the wharf, while he swung his right leg over the cap log and reached for the top rung of the ladder with his right foot. At any rate he testified that his left foot slipped in fish slime, and his body "pulled up solid" against his right arm, and broke his grip on the dog, with the result that he fell from the pier into the water and sustained serious bodily injury.

The jury returned a verdict for the plaintiff, and though the judge reserved leave under G. L. (Ter. Ed.) c. 231, § 120,

he refused to disturb the verdict.    The case is here on a
report of his refusal to direct a verdict in favor of the de-
fendant and his refusal to enter a verdict for the defendant
under the leave reserved.

The plaintiff could have been found to be a business in-
vitee of the defendant.    *Wendell* v. *Baxter*, 12 Gray, 494.
*Manter* v. *New Bedford, Martha's Vineyard & Nantucket
Steamboat Co.* 246 Mass. 551.    *Silva* v. *Henry & Close Co.*
279 Mass. 334.    *Fortier* v. *Hibernian Building Association of
Boston Highlands*, 315 Mass. 446.

In the opinion of a majority of the court it could have been
found that the defendant had a duty to clean the cap log and
the adjacent floor near the dog and the ladder within a
reasonable time after the "Cohasset" had been unloaded,
especially in view of the fact that the "Thomas Whalen"
was due to sail at two o'clock; that the unloading ended as
early as one o'clock; and that a failure to do the cleaning
before twenty minutes after two o'clock was negligent.
*White* v. *Mugar*, 280 Mass. 73.    *Correira* v. *Atlantic Amuse-
ment Co.* 302 Mass. 81.    In *Pereira* v. *Gloucester Community
Pier Association, Inc.* 318 Mass. 391, it did not appear that
the plaintiff had any further occasion to be at the pier at all,
or that the tenant who invited the plaintiff to the pier had
any rights in that part of the pier where the injury took
place.    In the present case it could have been found that the
crew of the "Thomas Whalen" were invitees until the vessel
sailed.

It could not have been ruled as matter of law that the
plaintiff was guilty of contributory negligence.    It is true
that he saw the slime, but a shipmate preceded him across
the cap log and down the ladder in safety.    It was necessary
for him to board his vessel at once, for it was about to sail.
The jury could find that he used reasonable care for his own
safety under the circumstances.    *Frost* v. *McCarthy*, 200
Mass. 445.    *Silver* v. *Cushner*, 300 Mass. 583, 588.    *Correira*
v. *Atlantic Amusement Co. Inc.* 302 Mass. 81, 83.    *Mello* v.
*Peabody*, 305 Mass. 373, 374, 375.    *Hebb* v. *Gould*, 314 Mass.
10, 15.    *Sodekson* v. *Lynch*, 314 Mass. 161, 166.

*Verdict to stand.*