**HERCULES POWDER COMPANY,**
Defendant, Appellant,

v.

**Jesse COSTA, Jr., Plaintiff, Appellee.**

**No. 5766.**

United States Court of Appeals
First Circuit.

April 27, 1961.

Joseph P. Rooney, Boston, Mass., with whom Ansel B. Chaplin, Boston, Mass., was on brief, for appellant.

Cornelius J. Sullivan, Boston, Mass., with whom Frank P. Cohen, Taunton, Mass., Jackson J. Holtz and Hershel Zonderman, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts entered for the plaintiff pursuant to a jury verdict.[1]

Plaintiff, Jesse Costa, Jr., commenced a tort action in the state court alleging that he was injured by reason of the negligence of the defendant, Hercules Powder Company, (hereinafter called Hercules) while he was on the premises

1. There was a verdict for the defendant upon its counterclaim. The judgment entered for the defendant on the counterclaim is not involved in this appeal.

owned by Hercules. The action was removed by Hercules to the federal court.[2] Hercules in its substitute answer denied negligence on its part and said that "if the plaintiff was injured as alleged, his injury was the result of his own negligence" and he could not recover. Hercules also set forth a counterclaim against plaintiff for goods sold and delivered.

The testimony given by the plaintiff relating to the accident may be briefly summarized as follows. Plaintiff was, at the invitation of Hercules, on the premises to arrange for the purchase of scrap metal. He was told by Hercules' maintenance foreman, Henry Holmgren, to go upstairs and see certain evaporators if he wanted to. Holmgren said "go up these stairs." At the foot of these stairs plaintiff met two employees of Hercules coming down. Plaintiff went up the stairs concerning which he testified: "It was light. It wasn't too light. It was enough, you could see, you know, it wasn't too light, it wasn't too dark." Plaintiff also testified: "I noticed some, in the middle of the stairs up, I noticed a few pieces of asbestos. There was a couple of other objects there." On cross-examination he testified:

"XQ. On the stairs as you went up you observed that there was debris on the stairs? A. Yes.

"XQ. There were pieces of asbestos? A. Yes.

"XQ. And some nuts and bolts? A. There wasn't many of them, no.

"XQ. There was some? A. Yes, there was.

"The Court: What did you see?

"The Witness: I saw some asbestos, and some bolts on the stairs.

"The Court: You did see some bolts?

"The Witness: Yes.

*   *   *   *   *   *

"XQ. You took a step down. Your foot struck a bolt, went out from you and you went down. Is that right? A. Yes.

"The Court: You didn't see the bolt?

"The Witness: I did not see it when I stepped on it.

"The Court: You do not know whether it was a bolt or not. The reason I ask, when you were asked on direct examination you said you stepped on some hard object.

"The Witness: I didn't see it when I stepped on it, no, your Honor.

"XQ. It was some object which, as I understood your testimony, it rolled under your foot. A. Yes.

"XQ. Like a bolt would? A. It was hard and round.

"XQ. Like a bolt? A. Yes."

Plaintiff further testified that he was upstairs looking at the evaporators around 15 or 20 minutes. As to what happened then he said:

"Well, after I had looked the evaporators over I thought it was time to go down to see Mr. Holmgren again. As I put my foot down on the first step, I stepped on a hard object and it took my foot from under me, it rolled under my foot.

"At first I put my hand out, I had climbed the stairs many a time, to hold my hand on the rail. My hand slipped on the rail, as my foot was rolling, I made two complete somersaults down the steps."

We believe that no matter how much plaintiff would be entitled to rely on the specific invitation of Holmgren to use the particular stairs as an assurance that they were safe, he cannot avail himself of such expectation if he saw the dangerous condition. Since it is plaintiff's own testimony that he saw the debris, asbestos paper and bolts, on the stairs and thus had notice of the dangerous nature of the stairs, he is bound by his testimony of such knowledge. Laffey v. Mullen, 1931, 275 Mass. 277, 175 N.E. 736; Reynolds v. Sullivan, 1953, 330 Mass. 549, 116 N.E.2d 128. In order to

2.  The parties are agreed that Massachuetts law is applicable to this case.

recover, plaintiff's conduct, subsequent to acquiring notice of the condition of the stairway, must measure up to what a reasonable person would do in like circumstances. The burden of proving that plaintiff did not act with due care in the circumstances is on the defendant. Mass. Ann.Laws, Ch. 231 § 85 (1956).

Defendant contends that as a matter of law it has shown that plaintiff was contributorily negligent and relies principally on O'Neil v. W. T. Grant Company, 1957, 335 Mass. 234, 139 N.E.2d 406. In that case the plaintiff, a customer in defendant's store, went up a few stairs to a landing and then into the ladies room. "When she got to this landing she noticed that it was very dirty and muddy. There was a small pail on the landing which was filled with cigarette butts. Water was overflowing from the pail so that the floor of the landing was wet, with cigarette butts and tissue paper all over it. She walked across the landing and went into the ladies room. When she came out about ten minutes later the condition of the floor of the landing was the same as it was when she earlier crossed it. In crossing this floor again to reach the steps she slipped and fell, sustaining injury." 139 N.E.2d at page 406. The court said: "It is indisputable that on her own testimony she observed the condition of the floor and its attendant dangers were obvious to her." 139 N.E.2d at page 407. The court held that the denial of a motion for a directed verdict for defendant was error and ordered judgment for the defendant.

■■ In view of the oft-enunciated principle that "plaintiff's knowledge of the defect [is] merely evidence of contributory negligence and [does not] require a finding of contributory negligence as a matter of law," [3] the condition that existed all over the landing in the O'Neil case must have been such as would make a reasonable person refuse to attempt to walk on it. In the instant case, however, plaintiff's testimony was that there were *some* bolts and asbestos paper on the stairs. While the matter may be close, we think that it was proper to submit to the jury the question of whether a reasonable person would believe that he could use the stairs and avoid the hazards he had seen there.

Defendant also contends that a verdict should have been directed for defendant on the ground that the evidence did not warrant a finding that defendant was negligent. Its argument is that (1) the jury was required to find that the condition of the stairs was obvious, (2) the defendant's plant was in the process of being dismantled and plaintiff knew it and that on these facts defendant was not under a duty to warn, to change its method of operation or to make the stairs safe. Defendant cites two cases on which it relies principally on this contention. Forgione v. Frankini Const. Co., 1941, 308 Mass. 29, 30 N.E.2d 819; LeBlanc v. Atlantic Building & Supply Co., 1949, 323 Mass. 702, 84 N.E.2d 10. Defendant did note that, in the Forgione case, the court stated that the plaintiff had not been on a "wrought path or designated course" among some foundation construction. [308 Mass. 29, 30 N. E.2d 820] In the instant case, plaintiff was on a stairway open for use to reach the second floor and was directed by Holmgren to use the particular stairs. There was also testimony that the particular stairway was not the one being used to remove dismantled equipment from the second floor. We believe that it was proper for the jury to say whether defendant should have employed some means to keep the stairs free from the hazards found by plaintiff. See Hayes v. Boston Fish Market Corporation, 1946, 319 Mass. 556, 66 N.E.2d 713;

---

3. McIlvane v. Percival, 1958, 337 Mass. 768, 148 N.E.2d 182, 183. See also Correira v. Atlantic Amusement Co., 1939, 302 Mass. 81, 18 N.E.2d 435; Dilworth v. Boston Garden-Arena Corporation, 1959, 339 Mass. 779, 162 N.E.2d 18.

**574**

Lajeunesse v. Tichon's Fish & Fillet Corp., 1952, 328 Mass. 528, 105 N.E.2d 245; McIlvane v. Percival, supra; Dilworth v. Boston Garden-Arena Corporation, supra. In all these cases the owner of the premises was held to a duty to make the premises reasonably safe, and plaintiff's knowledge of or the obvious nature of the hazard did not relieve the owner of this duty.

Defendant contends further that the lower court erred in refusing to give two of its requests for instructions. These requests, however, are essentially in the same terms as the contentions rejected by us and the district court did not err in refusing to give them.

■■ Defendant's last contention is that the district court erred in denying its motions to disqualify a juror and for a mistrial. The juror involved conversed at a drinking fountain in the court corridor with one of defendant's employees who was a witness for the defendant. The district judge conducted an investigation of the incident and rightly found no intentional wrongdoing on the part of anyone connected with the case. The trial judge designated the conversation between the witness and juror as "small talk" which indeed it was. He also concluded that the juror was still as impartial as before the conversation took place. The judge read his findings on the incident to the jury in order to remove any impression of misdoing that might have been received by them. The disqualifying of a juror or the granting of a mistrial is a matter within the trial judge's discretion. Steiner v. United States, 9 Cir., 229 F.2d 745, certiorari denied sub nom. Hadzima v. United States, 1956, 351 U.S. 953, 76 S.Ct. 847, 100 L.Ed. 1476; Wiltsey v. United States, 4 Cir., 1955, 222 F.2d 600. See also Pough v. Capital Transit Co., 1952, 90 U.S.App.D.C. 185, 194 F.2d 355. We find that the trial court's discretion was properly exercised here.

Judgment will be entered affirming the judgment of the district court.