JOHN SCANLON *vs.* UNITED CIGAR STORES COMPANY.

Worcester.    October 19, 1917. — November 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Negligence,* Invited person.

If a dealer occupies a store with a basement beneath it where packages of goods delivered in the course of business are received, and it is customary for persons delivering goods there to go round by the outside to the store on the floor above to notify some one there that they have goods to deliver, whereupon some one goes with them while the packages are delivered, and, if a man coming with goods to deliver finds no one in the basement and, finding a cellar door open which on his previous visits he had found locked, he enters and deposits a barrel of goods, and then, groping about in the dim light in search of some one to report to, he falls into a hole six feet deep and is injured, he cannot recover for his injuries in an action against the dealer, because he was not invited to enter the cellar, the fact that he found the door open which before he had found locked being no evidence of an implied invitation to enter.

In the same case it was *said,* that even if it should be assumed that there was an implied invitation to enter the cellar to deliver the barrel, there was no invitation to go about in the darkened cellar in search of a receiving clerk or to pass through the cellar as a short cut to the store above.

TORT for personal injuries sustained by the plaintiff on November 27, 1915, by falling into a hole or opening in the floor of the cellar of the defendant's place of business at the corner of Main Street and Pleasant Street in Worcester, when the plaintiff had gone there to deliver a barrel of goods. Writ dated December 15, 1915.

In the Superior Court the case was tried before *O'Connell,* J. The evidence is described in the opinion. At the close of the evidence, the judge having refused to order a verdict for the defendant, the defendant asked him to make the following rulings:

"1. Upon all the evidence the plaintiff cannot recover and the verdict must be for the defendant.

"2. Upon all the evidence in the case the plaintiff was a mere licensee upon the premises of the defendant at the time of his injury and the defendant owed him no duty except to refrain from wantonly and wilfully injuring him."

The judge refused to make either of these rulings and submitted

the case to the jury, who returned a verdict for the plaintiff in the sum of $432.32. The defendant alleged exceptions.

The case was submitted on briefs.

*C. C. Milton & F. L. Riley*, for the defendant.

*J. F. McGrath*, for the plaintiff.

PIERCE, J. This is an action of tort for damages sustained by reason of a fall into an opening into which a condenser had been placed in the cellar occupied by the United Cigar Stores Company at the corner of Main and Pleasant streets in the city of Worcester. The facts are substantially as follows:

The defendant occupied a store and a cellar beneath the store where the plaintiff was injured. The Bay State Trucking Company under an arrangement with the defendant, on an average once a week, on notice that the defendant had merchandise awaiting delivery, sent its teams to a freight office to get the merchandise and deliver it in the rear way of the defendant's store. The plaintiff was an employee of the trucking company. In the rear of the store there was a street passageway from which a door opened upon a water elevator operated by a rope; there was a bell on the left hand side of the elevator doorway. The elevator descended about twelve to fifteen feet from the level of the passageway to the basement floor of the cellar. In the basement were two sheathing partitions; one set off from the elevator the cellar of the defendant; the other partitioned off the cellar of another tenant. Three or four feet from the elevator an ordinary panel door opened into the cellar of the defendant; this door ordinarily was kept locked by a bar on the inside. All merchandise received at the rear of the store was kept in the cellar. Where goods to be delivered were of some size, the customary way of delivery was to drive the team to the elevator in the passageway, ring the bell by the side of the elevator door, and then, if the bell did not attract anybody's attention or was out of order, to go round to the outside, "up front," and ask for the shipping clerk.

The defendant's manager, called as a witness by the plaintiff, testified as follows: "It was customary for people delivering goods to come up to the store to notify us that they had goods to deliver; they invariably did that. Until we were notified upstairs nobody had a right in the cellar at all. Sometimes goods were

delivered in small parcels upstairs.  Larger parcels were delivered downstairs, but not until after notice was given to those in charge upstairs that there was something to be delivered downstairs, and after they were told where to deliver the parcels downstairs, and after there was some one to go with them while delivering the parcels."

On the day of the accident the plaintiff got a barrel from the freight depot and drove in the back alley; the elevator was not up when he got there.  He testified: "I called out because I could not get it under way.  The rope was on the inside, a ways from the door.  I got the rope.  The elevator well might have been ten feet deep.  The elevator came up; before the elevator came up I hollered and then I went and got my barrel off the team; it was a light barrel — I did not back up.  There was no response when I hollered but the elevator came up; I put the barrel on the elevator and took it down and went into the cellar; the door was open; . . . it was not open on my previous visits.  On the previous visits after going down in the elevator I rapped on the door and hollered and some one came and opened the door, but on the day of the accident the door was open.  I walked in with my barrel and rolled it in and hollered three or four times as loud as I could and nobody answered. . . . After I left the barrel near the door I took two or three steps ahead and hollered out in a loud voice and then stood still.  I hollered out to have somebody come and let them know I was there.  Nobody replied; I stood still and hollered three or four times, then I took a couple of steps more and stood up and hollered again.  I hollered three or four times and nobody answered and then I took one step more. I don't know whether it was forward or sideways; then I fell into the hole" which was six feet deep, with a brick foundation, constructed by an electric company to hold a condenser.  The plaintiff further testified: "It was dark enough so that when I took this step forward I felt I ought to go slowly, and I did go slowly, taking care that the place was not just as it ought to be and I knew the place and I thought just where I was going because I had been in there before and I thought that I could work my way.  I could not see much of anything, but I could distinguish anything.  I could have gone back again to the elevator and gone round and told the people in charge of the store that I was there."

At the close of the evidence the defendant made a motion "that upon all the evidence the court direct a verdict for the defendant." The presiding judge refused to grant the motion and the defendant excepted.

We are of opinion that the motion should have been granted. There is no evidence of an express invitation to the plaintiff to enter the cellar of the defendant; and the fact that the plaintiff found the cellar door open on this visit to the cellar affords no basis of proof of an implied invitation to enter, when the fact of the open door is considered in connection with the fact that the door was locked at the previous times when the plaintiff had delivered merchandise there, and with the further undisputed fact that it was customary for truckmen to notify those in charge of the store of their presence with merchandise ready for delivery in the cellar of the defendant, the door of which ordinarily was kept locked.

Moreover, should it be assumed that there was an implied invitation to enter the cellar to deliver the barrel, it is plain that there was none to afterwards go about in the darkened cellar in search of a receiving clerk, or to pass through the cellar in a short cut to the store above. *Cowen* v. *Kirby*, 180 Mass. 504. *Morong* v. *Spofford*, 218 Mass. 50. *Graham* v. *Pocasset Manuf. Co.* 220 Mass. 195.

*Exceptions sustained.*

*Judgment for the defendant under St. 1909, c. 236*