EMMA PILON, administratrix, vs. EASTHAMPTON GAS
COMPANY.

RAYMOND PILON vs. SAME.

Hampshire.    December 7, 1923. — February 27, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence*, Licensee: child permitted on premises near melted tar; In use
of melted tar.

At the trial of an action for personal injuries received by a child seven
years of age when he fell into boiling tar upon premises of the defend-
ant, a gas company, there was evidence tending to show the following
facts: The plaintiff entered the defendant's yard on invitation of other
boys who were going to get coke and chips.   The defendant was boil-
ing the tar for the purpose of painting butts of poles in the course of
its business.   Boys and other outsiders, to the knowledge of the de-
fendant's employees, had picked chips and cinders from ashes on the
defendant's premises for a considerable time previous to the accident.
*Held,* that
   (1) At most the plaintiff was a licensee upon the premises of the
defendant and the defendant owed him no duty to take precautions
for his protection but was responsible only for injuries wantonly or
wilfully inflicted;
   (2) There was no evidence of wanton or wilful misconduct on the
part of the defendant;
   (3) A verdict for the plaintiff would not have been warranted.

Two ACTIONS OF TORT, the second being for personal
injuries received by a boy seven years of age when he fell
into boiling tar on the premises of the defendant in East-
hampton.   The first action was brought by the father of the
plaintiff in the second action for consequential damages.
Writs dated December 16, 1921.

After the commencement of the actions, the plaintiff in
the first action died; his wife, the mother of the plaintiff
in the second action, was appointed administratrix of her
husband's estate, and by agreement and leave was admitted
as administratrix to prosecute the first action.

In the Superior Court, the actions were tried together
before *Lummus*, J.   Material evidence is described in the

opinion. At the close of the evidence, by order of the trial judge, a verdict was entered for the defendant in each action. The plaintiffs alleged exceptions.

The case was submitted on briefs.

*J. L. Lyman, D. A. Foley & R. P. Stapleton,* for the plaintiffs.

*J. B. Ely, W. C. Giles & W. A. McDonough,* for the defendant.

BRALEY, J. The defendant had an open yard at its works, a part of which is referred to in the record as a place where logs were shaped into telephone poles and the butts painted with a coat of heated carbolineum or melted tar. It was uncontradicted, that on the day of the accident some poles had been chipped and were to be painted. The tar had been on the fire for possibly twenty minutes, when it was lifted off and placed about a foot from the fire and seven feet behind the poles. The can having leaked through the parting of the seams and spread over the ground until the can was one half or three quarters full, an employee, one Shaw, who was in charge of the work, went away to procure another can, leaving no one to care for the fire or the tar. When returning, he noticed the plaintiff in the second case, a child about seven years of age, running towards him, who meanwhile had fallen into the fire and been severely burned. The jury could find that the plaintiff was one of a group of boys who were there while Shaw " was having the fire," and that it was dangerous for them to be near the tar.

It is contended, that the plaintiff was on the premises by the express or implied invitation of the defendant, and that, his due care being for the jury, there was evidence of the defendant's negligence. But it appears from the plaintiff's own testimony, that on the afternoon of the day in question, and by invitation of other boys who were going to the premises to get coke, he went with them and saw a man there, and a pan of tar in a fire near the poles. " We picked a bag full of coke and then two were picking coke and two were picking chips. I was picking chips on the poles. I went back and fell into the tar. The tar was not in the same place it was when I first saw it. I did not know

it had been changed. I took one step off the logs before I stepped into the tar." It is true there was evidence which tended to show, and the jury could find from the testimony of one Waltz, the defendant's foreman of construction and maintenance, that the town took the ashes from the retorts for use in the repair and maintenance of highways, and that boys had picked cinders from the ashes for about two years before the accident. The evidence of one Walder, also a foreman of the defendant, whose duties took him " all over the premises," in substance was, that he had seen boys gathering not only cinders, but chips, and the " butt ends of posts lying around the yard," which came from the logs as they were finished into telephone poles. It also could be found on all the evidence that outsiders had previously been permitted to remove chips, ends of poles, cinders, and ashes which accumulated at the works. The entrance of the plaintiff upon the premises as shown by his own evidence had no direct connection with the business there carried on. It was permissive only, even if the removal of chips, as well as ashes and cinders, incidentally kept the yard clean. *Plummer* v. *Dill*, 156 Mass. 426.

The plaintiff at most being a licensee, the defendant owed him no duty to take precautions for his protection, but is responsible only for injuries wantonly or wilfully inflicted, of which there is no evidence. *O'Brien* v. *Union Freight Railroad*, 209 Mass. 449, 453.

If the second action fails, the first action, brought originally by the father and after his death prosecuted by his administratrix, for the expenses and consequent damages resulting from the injury to his son, cannot be maintained. The entry in each case must be,

*Exceptions overruled.*