JULIUS FEINBERG
vs.
THE STROSE-ADLER CO.

Superior Court     New Haven County     File #47640

Present: Hon. JOHN A. CORNELL, Judge.

Weissman & Maretz,     Attorneys for the Plaintiff.

R. L. Halloran,     Attorney for the Defendant

## MEMORANDUM FILED DECEMBER 23, 1935.

CORNELL, J.   Plaintiff, in his complaint, alleges that his finger was injured while on and in the act of leaving defendant's premises where he was as an invitee.

His injuries were sustained, he avers, because in making his exit it was necessary for him to open a heavy gate, in the process of doing which his finger was caught between an iron plate on the wall of a building toward which the gate swings and against which it rests after being opened, and the edge of the gate.

An important question—and it is believed, a decisive one— has to do with the contention that plaintiff was an invitee.

Defendant owns and occupies premises consisting of large buildings used for the manufacture of wire, corsets and boxes, which premises front on Court Street and on Olive Street in New Haven.   On the Olive Street side are two driveways, the one nearest Court Street being known as the north and being the one made use of by plaintiff at the time he was injured.

South of this and about 200 feet from it, is the entrance to the office of the defendant from which access may be had to the several departments of manufacture located in the buildings which comprise the plant.

South of the offices is another driveway.

Both of these driveways are used for receiving material delivered to defendant's plant, and one south of the main or office entrance more especially for pulp board. That on the north is covered by the upper part of a factory building and leads to an open space surrounded by plant buildings of which that on the westerly side has a loading platform for the use of vehicles delivering or receiving merchandise for the defendant and for a casket company.

The building forming the west boundary of the open enclosure to which this driveway leads forms one side of a rectangle to which the driveway leads. Its first floor is occupied and used by a casket company, its basement and second floor by the defendant, on the latter of which at the end of the building nearest Olive Street is the office of the foreman of the box department.

The driveway is paved with heavy Belgian blocks and is used by both the casket company and the defendants for the purpose only of giving access to the loading platform which is located 200 feet from Olive Street for the use of trucks and other vehicles engaged in delivering or taking away raw materials or finished merchandise.

Access to the office of the foreman of the box department is gained through and from the main office by passing north on the second floor in that portion of the building which faces on Olive Street and connects at a right angle with that part used for the box department which fronts on Olive Street and lays along Court Street.

It appears that on January 9th, 1935, the plaintiff was desirous of having some sample boxes made for a shirt manufacturing concern of which he was general manager and that after telephoning to the man temporarily in immediate charge of defendant's box department in the absence of its superintendent,, was told by this party "to come over" to explain more definitely what type of box he wanted; that plaintiff asked the party with whom he talked where he could locate the latter in the plant and was told by him "to come right into the box factory"; that plaintiff had never been to defendant's factory before and did not know where the box department was and on being driven to the Olive Street portion of the plant, on coming to the north driveway inquired of

a person coming out of the latter, "where is the box factory" and in response to what he was told the car in which he was riding was driven through the north driveway into the open area and there parked; that, after making further inquiry of a man working on the loading platform, plaintiff made his way through the interior of the building occupied by the casket company on the first floor and by defendant in the basement and second floor, to the point where the foreman's office was located; that having transacted his business plaintiff followed the same course he had taken in entering the building in returning to the car; that thereupon the car in which plaintiff had seated himself, in leaving the premises drove out the driveway through which it had entered, but on coming to the gate, found it closed; that plaintiff asked a boy to have the gate opened, but upon being told by him that he could, himself, open it he did so and in so doing was injured.

The premises may be adopted that ordinarily any person entering defendant's premises for the purpose of transacting business with any of its officers or agents, whether as a result of an express or implied request would be an invitee and that as to such a person the defendant would be under the legal duty to exercise reasonable care to maintain the premises in a reasonably safe condition. **Stratton vs. Newbury Co., 117 Conn. 522.**

This duty, of course, applies to approaches and means of egress. **Petrillo vs. Kolbay, 116 Conn. 389.**

It is co-extensive with the invitation and relates not only to those portions of the premises to which a person is invited but, also, to those to which by implication the invitation applies. **Bunnell vs. Waterbury Hospital, 103 Conn. 520, 525; Meyer vs. Saint Augustine's Church, 109 Conn. 410, 413.**

It follows, necessarily, that the legal duty owing by an invitor to an invitee does not extend to portions of the premises which the latter is not impliedly invited to use from the fact that he has been invited to enter other portions of such premises. **Rooney vs. Woolworth, et al, 74 Conn. 720, 721; Keeran vs. Spurgeon Mercantile Company, 194 Iowa, 1240, 191 N.W. 99, 27 A.L.R. 579, 583; Scanlon vs. United Stores Co. 228 Mass. 481, 117 N.E. 840, 841, 45 C.J. pp. 831, 832, #240; 40 R.C.L. 66, 67.**

There was no express invitation or direction to the plaintiff to make use of the driveway or means of entrance which he chose to do. The invitation was to come direct to the box department, which it is found, meant to come to the box department to see the party with whom plaintiff had talked over the 'phone, instead of first interviewing others higher in authority or rank.

That direction did not, of course, contain any invitation to plaintiff as concerns the means of entrance to the box department which he was to make use of. Plaintiff had provided such a means through its main office which was but two hundred feet away from the driveway in question.

The driveway was not intended by defendant to be used as a means of entrance, nor as an approach to the use of the area to which it led as a parking space for cars, by those having business with it, nor was it used for any purpose except the delivery of materials to and the carrying of goods from the loading platform at the rear.

Insofar as it made access to the box department possible this was by means of a circuitous and inconvenient route.

It cannot be found that plaintiff was an invitee, express or implied in entering the driveway or using it as a means of exit. The situation is obviously distinguishable from that described in **Werebychick vs. Morris Land & Development Co., et al, 108 Conn. 226,** cited by counsel for plaintiff, since the question here discussed was not in issue in the latter case.

The designation of the location of the box factory by one person and the suggestion by a boy on the loading platform that plaintiff, himself, open the gate so that he might drive out by way of the driveway do not, of course, bind the defendant, since there is neither any identification of any of these parties as employees of defendant and no evidence from which the court could possibly find that they possessed authority to invite the plaintiff to use the portion of the premises in question even if what they said could be interpreted as an invitation to do so.

The highest status that can be given the plaintiff is that of a licensee; as such he took the premises as he found them. **Pomponio, Adm. vs. N. Y., N. H. & H. R.R. Co., 66 Conn. 528, 537,** unless the defendant knew that he was going to use the gate and would be required to open it to do so, in

which latter event, the duty would be upon defendant to avoid injuring him by a positive act of negligence or a failure of duty equivalent thereto. **Ward vs. Avery, 113 Conn. 394, 396, 397.**

The only attempted approach to an effort to show knowledge on defendant's part in this respect, is evidence that the party with whom plaintiff consulted in the box department knew that he was going to leave by the same means as he had entered. Palpably, and for obvious reasons, this is insufficient.

If it could be found, however, that plaintiff was an invitee and that the conditions surrounding the opening of the gate were such as to constitute it a nuisance or the defendant guilty of negligence in maintaining it or in failing to give notice of its propensity toward causing injury to persons in opening it, the question is immediately presented, was plaintiff still an invitee in opening the gate, himself, or did he forsake that role and become a trespasser or licensee in so doing.

The gate was not a mere barrier to those who might be inclined to enter against its opposing presence. It consisted of two sections, each weighing about six hundred pounds, the same being made entirely of iron and aside from the frame, consisting of upright bars across which at a right angle an iron plate $\frac{1}{4}''$ thick, 18'' wide and of a length corresponding to the width of each section was laid. Each element was of a heighth of 8 feet 10 inches and 5 feet $2\frac{1}{2}$ inches in width.

When closed, the gate is stiffened in that position by an iron rod, 9 feet long which extends from the building wall on the north side and attaches to a device on the gate. In addition to this there is, also, a heavy lock which binds the two parts of the gate together. These gates are kept closed and locked during the close of working hours and are shut though not locked during the noon hour. One of the purposes of this latter measure is to keep undesirable persons off the premises when the men employed in the factory are not working.

When the plaintiff entered the driveway it was before 12 noon and the gates were ajar. When he was in the act of leaving the premises, it was during the noon hour and the gates were shut and the iron rod which prevented their being

opened from the outside was in place.

That the defendant was thus within its rights in regulating the use of its own property is self-evident. That the plaintiff in interfering with the exercise of that right, without permis-sion from someone having authority to give it in behalf of defendant, probably became a trespasser is not an unreasonable conclusion. Of a certainty such would be the case if he exceeded the limits of a license, to the extent that he did so, although that would not make him a trespasser ab inito. Katsonas vs. Sutherland Building & Contracting Co., 104 Conn. 54. Obviously, at least, in passing "the bounds of his invitation", the plaintiff lost the status of an invitee, if he could be said to have had or acquired that status "and the rights which accompany it". 45 C.J. p. 850, #239.

The principal right thus sacrificed was the benefit of the duty which the defendant would have owed as an invitor to use reasonable care to maintain the premises in a reasonably safe condition for plaintiff's use as an invitee and the sub-stitution in its stead of a duty only on defendant's part to refrain from active negligence. Defendant was not guilty of any violation of this latter duty.

Under the view of the evidence here taken, the issues are found for the defendant as formed by the complaint and answer except that plaintiff is not found guilty of contributory negligence, and for the defendant, likewise, as presented by the special defense of assumption of risk. L'Heureux vs. Hurley, 117 Conn. 347, 353, 354 and dissenting opinion, Maltbie, C. J. in Hill vs. Way, 117 Conn. 359, 369, where it is said: "On the one hand, a person who sees fit to commit a trespass is deemed to assume the risk of any dangers he may incur, or to put it in the vernacular, "he takes his chances."

Judgment for defendant.