ELIZABETH CLIFFORD *vs.* WELLINGTON DINERS, INC.

Suffolk.   March 4, 1947. — April 8, 1947.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Negligence*, Invited person, One owning or controlling real estate.

No action could be maintained by a customer of a "diner" who, directed by an employee of the "diner" to a "ladies' room" on adjacent premises, attempted to enter a door on the adjacent premises other than the door to which she was directed, and was injured.

TORT.   Writ in the Superior Court dated February 14 1943.

The action was tried before *Donahue*, J.

*H. S. Avery*, (*E. J. Carson* with him,) for the plaintiff.
*C. C. Petersen*, for the defendant.

DOLAN, J.   This is an action of tort to recover compensation for personal injuries sustained by the plaintiff in the circumstances described below.   The case was tried to a jury, and at the close of the evidence the judge allowed the defendant's motion for a directed verdict in its favor, to which action the plaintiff duly excepted.   The parties entered into a stipulation that, if the case should have been submitted to the jury "upon the evidence that was admitted and any admissible evidence that was excluded, . . . judgment should be reversed and judgment entered for the plaintiff in the sum of $2,000; otherwise judgment should be entered for the defendant."

The evidence in its aspect most favorable to the plaintiff would have warranted the jury in finding the following facts: On May 10, 1941, between midnight and one o'clock A.M., the plaintiff entered the defendant's diner with a Mrs. Page. They ordered sandwiches and coffee.   It having become necessary for the plaintiff to go to the ladies' room, she inquired of the counterman whether there was a ladies' room for customers.   He said "Yes."   The plaintiff inquired as to its location, and the counterman pointed to a door leading

from the diner (the only door in the diner) and told her to go "to the first door in to her right." The plaintiff went out of the diner, went to the first door on her right, and found that it was locked. She stepped back and looked "down further, and there was a door open." What she thus called a "door" was the entire opening "in the front of the inside of which" was a grease pit. "When she started to walk in, it was all dark inside except that the light from the street showed in front where she could walk in . . . after she got inside it was all dark . . . she could see from the outside that it was all dark in there." She "only took about three or four steps in when her foot hit something and it threw her forward and she went into the pit." "It was so dark in there that she couldn't see the pit . . . it was pitch dark in there . . . she couldn't see anything at all in that room." The place in which she fell was a part of premises leased to Jennings and Tabor by the owners, Leighton & Barrie, Inc., which were used by the lessees "as a garage and gasoline service station." The defendant's diner was on another portion of the same premises owned by Leighton & Barrie, Inc., which was leased to the defendant. The door to which the plaintiff had been directed was the first door to the right as one left the diner. It led to a room used by Jennings and Tabor as an office and store room. In the rear of the room was a toilet for men, and a stairway led to a room above in which were located dressing rooms and a toilet for women. There was no toilet in the diner, and the defendant's lease did not include anything other than the space occupied by the diner. There was no connection between the "filling station" office and the diner. The distance from the entrance to the diner to the opening into the grease pit was roughly between forty and fifty feet, and that "from the entrance where the toilet was located to the opening of the grease pit was about forty feet." There was a chain with a hook to fasten across the opening to the grease pit. At the time that the plaintiff entered, no chain was strung across the opening. Female employees of the defendant used the toilet in the "filling station" office, and other persons had been seen coming from the diner in the

daytime and going to the toilet in that office. Two women were employed in the diner during the day but none after nine o'clock at night. One of the women employees of the defendant sometimes had a key to the door leading to the toilet. "To get to the toilet, [one] would have to go on the property of the garage."

Evidence offered by the plaintiff to show that on other occasions patrons of the diner upon inquiry had been directed by attendants in the diner to the toilet in the garage office quarters "next door," that employees and customers of the defendant and of Jennings and Tabor used that toilet, that the president of the defendant corporation knew that there was a likelihood that customers coming into the diner would want to use a toilet, and that he knew that the defendant's employees used the toilet in the office quarters of the garage building, was excluded, subject to the plaintiff's exceptions. The exclusion of this proffered evidence was not erroneous. Its admission as well as the evidence that was admitted to substantially the same effect could not affect the proper disposition of the case. The decisive facts which the jury would have been required to find are that the invitation to the plaintiff to use the toilet in question was limited to entrance by the door leading thereto, the "first door in to her right," a few feet away as she left the diner; and that the invitation did not extend to that part of the garage and service station where the grease pit was located forty feet beyond, and where the plaintiff was injured. On all the evidence a ruling was required that the defendant owed no duty to the plaintiff with respect to the condition of the premises where she was injured. *Davis* v. *Bean,* 298 Mass. 135, 136, and cases cited. *Wilkie* v. *Randolph Trust Co.* 316 Mass. 267, 269.

The verdict for the defendant was ordered rightly.

*Exceptions overruled.*