GEORGE LeBLANC *vs.* ATLANTIC BUILDING & SUPPLY Co., INC.

Essex. October 5, 1948. — February 10, 1949.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Negligence,* One owning or controlling real estate, Lumber yard, Invited person.

A finding, that an employee of a customer of a lumber yard was a business visitor while in the yard with the customer getting shingles from a shed therein, was warranted by evidence that, although the customer and the employee entered the yard and went to the shed for the shingles without stopping at an office at the entrance to the yard to arrange for purchase of the shingles, as was expected of business visitors ordinarily, the customer was an old customer and had done the same thing on frequent previous occasions with the knowledge and acquiescence of the proprietor of the yard.

A finding of negligence on the part of the proprietor of a lumber yard toward a business visitor, injured when he tripped over a piece of canvas as, carrying a bundle of shingles, he stepped down from a raised platform of a shed in the yard, was not warranted where the evidence showed that the injured visitor had seen the canvas lying in plain view in the yard a few feet out from the shed when he went thereto and, although there was evidence that before he came out of the shed the canvas had been moved to a position "right near the doorway, against" the shed, it was a matter of conjecture whether it had been moved by a companion of the injured visitor or by an employee of the proprietor of the yard working near by.

TORT. Writ in the Superior Court dated November 20, 1946.

The action was tried before *Collins*, J.

E. J. *Garity*, for the defendant.

G. J. *Tauro*, for the plaintiff.

WILLIAMS, J. This is an action of tort for personal injuries received on June 4, 1946, on premises owned and maintained by the defendant on Broad Street, Lynn. After a verdict for the plaintiff the case comes here on the parties' bills of exceptions wherein the defendant's exceptions are to the denial of its motion for a directed verdict and to a portion of the judge's charge. The plaintiff's exceptions have been waived.

On the morning of the accident the plaintiff, who was employed as a carpenter by one John Crooker, went with his employer and the latter's brother Joseph Crooker to the defendant's lumber yard to obtain shingles. Without speaking to any employee of the defendant, the three drove into the yard in an automobile and parked opposite and about twenty feet away from one of the entrances to a shed in which bundles of shingles were stored. They entered the shed, selected some shingles and brought them out to the automobile. While returning from a second trip into the shed, the plaintiff fell and was injured.

There was evidence that ordinarily business visitors were expected to stop at the office at the entrance to the yard and arrange for the purchase of required material with the defendant's salesmen, but that John Crooker, being an old customer, had frequently and with the knowledge of the defendant's employees entered the yard without stopping at the office, selected the lumber himself, and then had accounted for it as he left the yard. This prior conduct had met with the defendant's acquiescence. The jury could have found that John Crooker was in the yard as an invited person and at the time and place of the accident was not acting outside the scope of the defendant's implied invitation. *Grogan* v. *O'Keeffe's Inc.* 267 Mass. 189. *Silva* v. *Henry & Close Co.* 279 Mass. 334, 336. *O'Brien* v. *Harvard Restaurant & Liquor Co. Inc.* 310 Mass. 491. As

Crooker's employee the plaintiff was acting within the limits of the invitation to Crooker. *Adams* v. *George Lawley & Son Corp.* 314 Mass. 87.

When the automobile stopped, the plaintiff saw a piece of canvas in the driveway between the automobile and the doorway of the shed five or six feet out from the building. The canvas was about four feet wide and five or six feet long and was wrinkled up. The doorway or platform in front of the doorway was raised one and a half feet from the ground. The men entered the shed and brought out to the automobile three bundles of shingles, each bundle weighing seventy pounds. They returned for more shingles, John Crooker entering the shed first, then the plaintiff, and last Joseph Crooker. Both the plaintiff and Joseph Crooker testified that at that time they saw the canvas in the driveway. The shingles were piled in the rear of the shed some fifteen feet from the doorway. John Crooker lifted a bundle of shingles and went out. The plaintiff followed him and Joseph Crooker followed the plaintiff. As the plaintiff came out behind John and stepped down from the platform, he fell over the piece of canvas. When the automobile drove up to the shed an employee of the defendant, one Segal, had been piling lumber ten to twenty feet away. His work for the defendant consisted in piling lumber, loading trucks and cleaning up the yard. At the time the plaintiff fell Segal was four or five feet away from him. John Crooker was then at the automobile depositing his shingles and Joseph Crooker was still in the shed. The plaintiff testified that "he stepped down, started to step down, and the end of his foot caught on that piece of canvas that was in the driveway, it looked like the same one; he tripped and went down; . . . when he got caught on it the canvas was right near the doorway, against the building." As he stepped down "he did not look where he was stepping down to . . . he was looking ahead." He had the bundle of shingles "on his right shoulder with both hands holding it up."

The principal question before us relates to the defendant's negligence as it is clear that the evidence did not

warrant a ruling of lack of due care on the part of the plaintiff.

It is a familiar rule that a landowner owes to business visitors a duty to use reasonable care to keep the premises in a reasonably safe condition for such visitors' use according to the invitation extended to them, or at least to warn them of dangers not obvious to the ordinary person but which are known or should be known to the landowner. *Kelley* v. *Goldberg*, 288 Mass. 79, 81. *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368, 373. *Parker* v. *Jordan Marsh Co.* 310 Mass. 227, 229. This duty to warn does not extend to dangers, knowledge of which the landowner may reasonably assume the visitor has. *O'Hanley* v. *Norwood*, 315 Mass. 440, 442.

In the present case the premises consisted of a lumber yard presumably in active operation. The object over which the plaintiff tripped was a canvas used in the conduct of the defendant's business but not then being in actual use. Its presence in the driveway was obvious. The plaintiff in fact saw it and any warning concerning it would have been an "empty form." *Campbell* v. *Dearborn*, 175 Mass. 183, 185. Although it had remained there two or three days, it presented no greater hazard to visitors than scattered pieces of lumber which might be expected to be lying about. It cannot be said that the defendant through its agents or servants should reasonably have anticipated that it would be a source of danger to invited persons who would expect to find conditions that would naturally result from the manner in which the business was openly and visibly being carried on. See *Crone* v. *Jordan Marsh Co.* 269 Mass. 289 (rug in store); *Mahoney* v. *Great Atlantic & Pacific Tea Co.* 269 Mass. 459 (sled in store); *Adriance* v. *Henry Duncan Corp.* 291 Mass. 202 (lawnmower in store); *Brooks* v. *Sears, Roebuck & Co.* 302 Mass. 184 (wooden curb in parking lot); *Parker* v. *Jordan Marsh Co.* 310 Mass. 227 (low platform in store); *O'Hanley* v. *Norwood*, 315 Mass. 440 (protruding handle of a jack in a filling station); *Flanders* v. *Pailey*, 320 Mass. 744 (electric cord in office).

The plaintiff, however, contends that his injuries were

caused by the act of Segal in moving the canvas from where it originally lay in the driveway to a position in front of the doorway to the shed where the plaintiff and his associates were working. In our opinion, however, the evidence is not sufficient to establish that Segal moved the canvas. A jury are entitled to find facts on the basis of reasonable probabilities. Here no one saw the canvas moved. There was evidence that Segal was in the vicinity. But John Crooker and Joseph Crooker were also present. The jury were entitled to disbelieve a denial of Segal made on the witness stand that he moved the canvas. But this disbelief in itself did not furnish affirmative evidence that Segal moved it. Joseph Crooker testified that when he entered the shed for the second time he saw the canvas in its original position but he was not asked whether or not he moved it. John Crooker preceded the plaintiff out of the shed on the second trip and he was not asked whether he moved the canvas. It is as reasonable to suppose that either John or Joseph Crooker, seeing the canvas lying in his path between the shed and the automobile, kicked it aside as it is to suppose that Segal at that particular time proceeded to move the canvas, not to take it away but to place it immediately in front of the doorway. A finding that Segal moved the canvas rather than that either one of the Crookers did requires an inference of fact based on surmise and conjecture rather than upon probability. *Rankin* v. *Brockton Public Market Inc.* 257 Mass. 6. *Prushensky* v. *Pucilowski*, 269 Mass. 477, 479. *Dunbar* v. *Ferrera Bros. Inc.* 306 Mass. 90. *Mucha* v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592. Inasmuch as the evidence was not sufficient to show negligence on the part of the defendant, we need not consider the defendant's exception to that portion of the judge's charge where he stated that the jury had a right to draw the inference that the canvas was moved by Segal.

> *Plaintiff's exceptions dismissed.*
> *Defendant's exceptions sustained.*
> *Judgment for the defendant.*