MARY ZAIA *vs.* "ITALIA" SOCIETA ANONYMA DI NAVIGAZIONE.

Suffolk.    December 8, 1948. — July 14, 1949.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Negligence,* Invited person, Steamship.  *Carrier,* Of passengers, Steamship.  *Admiralty.*

In the absence of evidence as to a pertinent custom, a finding was not warranted that one who boarded a passenger ship, as it was preparing to leave its dock, for the mere purpose of making a social call upon a passenger was impliedly an invitee to whom the steamship company

owed a duty to use reasonable care to keep the premises in a reasonably safe condition for his use.

The liability of a steamship company to one injured through a defective condition of the premises while on board a passenger steamship for the mere purpose of making a social call on a passenger was to be determined by reference to our common law because, although the injuries occurred on navigable water, it did not appear that the maritime law had developed any peculiar rules of its own determinative of the case.

TORT. Writ in the Superior Court dated April 25, 1939. The action was tried before *Murray*, J.

*A. L. Brown*, (*W. Kopans & N. Fink* with him,) for the plaintiff.

*K. C. Parker*, (*J. J. Mulcahy* with him,) for the defendant.

WILLIAMS, J. This is an action of tort for personal injuries where, after a verdict for the plaintiff, the judge, subject to an exception by the plaintiff, entered a verdict for the defendant under leave reserved. From the consolidated bill of exceptions of the plaintiff and the defendant it appears that the plaintiff was injured on Sunday, July 31, 1938, while on one of the decks of the defendant's steamship "Vulcania," which was docked at Commonwealth Pier in Boston. The plaintiff had visited the ship to bid good-bye to a friend, a passenger, who was sailing that day for Italy. "On her way off the boat to go home" after orders had been given that anyone not a passenger must leave, she tripped on a loose strip of brass connecting two rubber mats, fell and was injured. According to her testimony, she had never been on any ship before to see anybody off or to say good-bye. Having reached the pier with some friends who accompanied her, she had ascended the gang plank, which reached to the ship from the pier at an angle, and had gone on board. She possessed no pass to go on the ship and was not asked to present one. Evidence of the defendant that passes were required for those who desired to board the ship and that no one was permitted on board without such a pass (which contained a provision for limitation of liability) could have been disbelieved by the jury. There was evidence of the due care of the plaintiff and of an unsafe

condition which caused the plaintiff's injuries. The determining question for decision is whether there was evidence warranting a finding of an implied invitation to board the ship because of which the defendant owed to the plaintiff a duty to use reasonable care to keep the premises in a reasonably safe condition for her use. *Kelley* v. *Goldberg,* 288 Mass. 79, 81. *LeBlanc* v. *Atlantic Building & Supply Co. Inc.* 323 Mass. 702, 705.

A person may become an invitee when he is expressly invited to come on premises, or when, from their construction or use, such an invitation can be implied. Such person "must show that he was impliedly invited upon the premises by some allurement or inducement held out by the owner or person in control with intention and design. Such an invitation is not to be implied from a merely tacit assent to the use of the place." *Brosnan* v. *Koufman,* 294 Mass. 495, 499–500. In the case of a business visitor, in order to create this obligation of reasonable care on the part of the owner there must be something more than a mere invitation. The gratuitous social guest receives an invitation but as to him there is no such obligation. *Statkunas* v. *L. Promboim & Son Inc.* 274 Mass. 515, 518, 519. *Comeau* v. *Comeau,* 285 Mass. 578, 582. *Colbert* v. *Ricker,* 314 Mass. 138. There must be a real or apparent intent on the part of the invitor to benefit in a business or commercial sense and an intent on the part of the invitee to enter upon the premises for a purpose consistent with that of the invitor as evidenced by the invitation. *Plummer* v. *Dill,* 156 Mass. 426, 427.

In this case we consider the relationship of the defendant, an ocean carrier of passengers, with the plaintiff, who boarded one of its vessels for the purpose of a social call on one of the passengers. The plaintiff had no intent to engage in business with the shipowner, and the accrual of a possible incidental benefit to the shipowner from permitting its passengers to have friends visit them was not sufficient to convert the plaintiff into a business visitor. *Wurm* v. *Allen Cadillac Co.* 301 Mass. 413, 416. *Pilon* v. *Easthampton Gas Co.* 248 Mass. 57. *Wilkie* v. *Randolph Trust Co.* 316 Mass. 267.

The obligation, however, to exercise reasonable care for the safety of invitees is not limited to business visitors. There is a class of cases, to which *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368, and *Holmes* v. *Drew*, 151 Mass. 578, belong, where the defendant, by his conduct having induced or impliedly invited the public to use a way in the belief that it is a public way which may be used as a matter of public right, is held to owe to those so using it the duty of exercising reasonable care for their safety. See *Plummer* v. *Dill*, 156 Mass. 426, 430. Another line of cases, closer by analogy to the instant case, deals with the duty of care owed by a railroad to friends of its passengers who enter its station or come upon its platforms to welcome or bid farewell to arriving or departing travellers. By the weight of authority it is held that the obligation of the railroad toward such visitors is to exercise reasonable care for their safety. *Fournier* v. *New York, New Haven & Hartford Railroad*, 286 Mass. 7. *Kircher* v. *Atchison, Topeka & Santa Fé Railway*, 32 Cal. (2d) 176. *Atlantic & Birmingham Railway* v. *Owens*, 123 Ga. 393. *Newberry* v. *Baltimore & Ohio Chicago Terminal Railroad*, 223 Ill. App. 304. *New York, Chicago & St. Louis Railroad* v. *Mushrush*, 11 Ind. App. 192. *McKone* v. *Michigan Central Railroad*, 51 Mich. 601. *Himstreet* v. *Chicago & Northwestern Railway*, 167 Wis. 71.

Unless special permission to enter is given, this obligation is not usually held to extend to the trains of the railroad except when the person boarding the train does so for the purpose of assisting the passenger. *Lowden* v. *McClung*, 80 Fed. (2d) 694. *Railway Co.* v. *Lawton*, 55 Ark. 428. *Cannon* v. *Atchison, Topeka & Santa Fé Railway*, 101 Kans. 363. *Lewis* v. *Illinois Central Railroad*, 319 Mo. 233. *St. Louis & San Francisco Railroad* v. *Isenberg*, 48 Okla. 51. The opinion in *Fournier* v. *New York, New Haven & Hartford Railroad*, 286 Mass. 7, the leading case in this Commonwealth upon the subject, indicates that friends of passengers may "demand" admission to the station and platforms and that the railroad as a common carrier is "bound" to

keep these premises safe for their use. The underlying reason, however, for imposing the obligation in this and the other cases above cited, is the implied invitation to enter. The implication of invitation is derived from the general if not universal custom of the railroads in this country to permit a part of their property, maintained for the accommodation of passengers, to be freely used by those who come because of friendly interest in the passengers. No evidence of any similar general custom in reference to ocean vessels, from which an inference of invitation might be made, has been offered in the present case. We are not aware of any such custom and, if one exists, former decisions of this court have failed to recognize it. In *Metcalfe* v. *Cunard Steamship Co.* 147 Mass. 66, 67, it was held that one who went on board a vessel at dock to see the ship's doctor was not an invited person. The court said, "It could not be presumed by the jury that there was a general invitation to the public at all times, merely because the defendant was a carrier of passengers. The practice is well known to be otherwise with vessels, however large their carrying business." In *Freeman* v. *United Fruit Co.* 223 Mass. 300, it was held that a tailor who boarded a ship at the request of the radio officer for whom he was making a uniform was only a licensee, as his visit was solely for his own pecuniary gain.

In other jurisdictions where a person on a friendly visit to a ship's passenger has been allowed to recover, the decisions have been based either on a finding of a general custom or on the existence of a business relationship because of a probable ultimate benefit to the shipowner. *The Dresden,* 62 Fed. 438. *The City of Seattle,* 150 Fed. 537. *McCann* v. *Anchor Line, Ltd.* 79 Fed. (2d) 338. *Powell* v. *Great Lakes Transit Corp.* 152 Minn. 90. We are unable to follow these decisions. The evidence before us does not support the contention that the plaintiff was impliedly invited by the conduct of the defendant to board the ship either as a business visitor or as a friend of a passenger. There was no error in entering a verdict for the defendant. Since the

alleged cause of action arose on navigable water, it concerned a maritime tort, but "the maritime law, so far as we are aware, has developed no peculiar rules of its own for the definition of the defendant's duty or the determination of its breach." The case is therefore decided in accordance with the principles of our common law.. *Thorneal* v. *Cape Pond Ice Co.* 321 Mass. 528, 533. See *Proctor* v. *Dillon,* 235 Mass. 538, 540-544.

The plaintiff's exceptions must be overruled. The defendant's exceptions are waived and accordingly are dismissed.

> *Plaintiff's exceptions overruled.*
> *Defendant's exceptions dismissed.*