TERESA BELMONTE, administratrix, vs. EMANUELA
CAPODILUPO.

Suffolk.    December 9, 1954. — December 30, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Negligence*, Invited person, Licensee.

In an action against the owner of an apartment building for a death
allegedly resulting from a fall due to a broken tread of one of the steps
of a common stairway leading to the upper floors and under the de-
fendant's control, the evidence, even if it showed that the deceased
was in the building as a business visitor of the defendant, left it con-
jectural whether he was on the stairway at the time of his fall as such
business visitor or was no more than a mere licensee on the stairway,
and the plaintiff could not recover.

TORT.    Writ in the Superior Court dated January 16,
1948.

The action was tried before *Warner*, J.

*Thomas A. Brett*, for the plaintiff.

*John Santoro*, for the defendant.

SPALDING, J.    This is an action of tort for death in which
the plaintiff had a verdict which was recorded under leave
reserved.    Thereafter, subject to the plaintiff's exception,
the judge entered a verdict for the defendant.    The case
comes here by report and the only question for decision is
whether there was a case for the jury.    See *Berwick &
Smith Co.* v. *Salem Press, Inc.* 331 Mass. 196.

The evidence was as follows: The defendant was the
owner of property at 91 Prince Street, Boston, which con-
sisted of two five story multiple dwelling units.    The units,
originally separate, had been joined by a ground floor cor-
ridor running from the entrance past two stairways, one in
each building.    They will be referred to hereinafter as the
front and rear stairways.    Each stairway provided access to
the upper floors of its respective building.    About five feet

beyond the rear stairway there was a door to a stairway which led to the basement below, and about five feet beyond the basement door there was a closet in which ash barrels were stored.

The front and rear stairways were used by the tenants and were under the control of the defendant. A large section of marble comprising part of the tread of the fourth step from the bottom of the rear stairway had broken off and the step had been in that condition for about a month prior to the accident. The defendant had cleaned the stairs almost daily for about one month preceding the accident.

The plaintiff's intestate, hereinafter called the deceased, up to two or three weeks prior to the accident had been an employee of the defendant for the purpose of taking out ash barrels once a week from the rear part of the ground floor corridor of the premises here involved. About three weeks before the accident the deceased had been seen standing on the ground floor of the property with a broom in his hand at which time the defendant was "bawling him out" for inefficiency in his sweeping.

On December 13, 1947, about 8:05 P.M. the deceased was found unconscious on the ground floor corridor with his head pointing toward the cellar door and his feet toward the bottom step of the rear stairway. The deceased died on the following day. Death, according to the hospital records, was "due to a basal skull fracture."

The son of the deceased testified that while at the hospital his father during moments of consciousness made the following statement: "Padrone Capodilupo sent me in the building to do something. . . . I went into the building. It was dark. I fell down the broken step." A son-in-law of the deceased who was present at that conversation said that he heard the deceased say "something about falling, getting caught on a broken step, his foot got caught and he fell" and that "Capodilupo sent for him, he was working, and when he went in there to do something, that is when he fell on the broken step and got his foot caught."

The jury in response to special questions found that the

deceased was on the premises at the invitation of the defendant "for the purpose of doing something" for the defendant "at her request but not as her employee."

We assume that on the foregoing evidence the jury could have found that the deceased was in the building for some purpose beneficial to the defendant (*Comeau* v. *Comeau*, 285 Mass. 578) and was therefore a business visitor to whom the defendant owed a duty to use care to keep her premises in a reasonably safe condition. *LeBlanc* v. *Atlantic Building & Supply Co. Inc.* 323 Mass. 702, 703. *Greenfield* v. *Freedman*, 328 Mass. 272, 274. But the plaintiff had the burden of proving that the deceased was a business visitor on that part of the premises where she alleges the accident took place. *O'Brien* v. *Harvard Restaurant & Liquor Co. Inc.* 310 Mass. 491, 493. If the deceased was on the stairway without invitation, express or implied, his status was no better than a licensee as to whom the defendant owed no duty to keep her premises safe. *Graham* v. *Pocasset Manuf. Co.* 220 Mass. 195, 196. *Scanlon* v. *United Cigar Stores Co.* 228 Mass. 481, 484. *Pereira* v. *Gloucester Community Pier Association, Inc.* 318 Mass. 391, 395. *Clifford* v. *Wellington Diners, Inc.* 321 Mass. 237. *Coates* v. *First National Stores Inc.* 322 Mass. 563, 565. This burden, we think, has not been sustained here. There is no evidence as to the extent of the invitation, as to what work the deceased was to do, or as to what part of the premises he would reasonably be expected to be on in doing "something" for the defendant. Thus an essential element of the plaintiff's case, proof of invitation to be upon the stairs, was left in the realm of surmise and conjecture. The judge, therefore, did not err in entering a verdict for the defendant under leave reserved.

The entry must be

*Judgment for the defendant.*