EDWARD D. LAMBERT & another *vs.* METROPOLITAN
TRANSIT AUTHORITY.

Suffolk.   November 5, 1958. — April 23, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, &
WHITTEMORE, JJ.

*Negligence,* One owning or controlling real estate, Fence.

Evidence in an action that a sectional iron pipe fence four feet high
owned and maintained by the defendant along a footpath which the
public were invited to use fell upon and injured the plaintiff as he was
walking on the footpath, and that about two months after the defendant
last inspected the fence and a few weeks before it fell its uprights had
become substantially corroded, a six inch "chunk" of metal had broken
off from the base of the first upright, concrete into which most of the
uprights were bolted had broken to some extent, and the fence would
move if grasped and would rock in a stiff wind, would have warranted
a finding that such condition of the fence was due to negligent main-
tenance on the part of the defendant and was the cause of the injuries
sustained by the plaintiff.

TORT.   Writ in the Superior Court dated August 5, 1953.

The action was tried before *Warner,* J.

*Thomas A. Brett,* for the plaintiffs.

*Vincent M. Banks,* for the defendant.

WILLIAMS, J.   This is an action of tort brought by a five
year old boy to recover for personal injuries and by his
father to recover for consequential damage resulting from
the fall of an iron fence owned and maintained by the de-
fendant on its property adjoining Mather Street in the
Dorchester section of Boston.   It was alleged that the de-
fendant was responsible for the fall by its negligence in
permitting the fence to have become "defective, deteriorated
and loose."   At the conclusion of the evidence the judge al-
lowed a motion by the defendant for a directed verdict on all
counts to which ruling the plaintiffs excepted.

There was evidence that the fence bordered on an eight
foot passageway or footpath leading from Melville Avenue

to Mather Street on the farther side of which the path continued to the defendant's Shawmut Station. It was a pipe fence carrying two rails of black iron pipe with uprights of pipe spaced seven feet apart. There were four sections of the fence on the right of the passageway as one approaches Mather Street from Melville Avenue. At Mather Street the fence turned at a right angle and continued on that street for an additional twenty feet. Along the passageway there were five uprights or posts, four of which including the corner post at Mather Street were screwed into flanges which in turn were bolted into the concrete of the path. The one nearest Melville Avenue, referred to as the first post, was outside the concrete and imbedded in the ground. The iron posts and the connecting pipes were subject to corrosion which if allowed to continue might eventually cause the fence to fall. Corrosion is a gradual process and it would take more than a month for the pipe to corrode through. The fence fell on April 25, 1953. It was last inspected by the defendant on February 5, 1953. A few weeks before it fell the posts along the passageway had become substantially corroded and a six inch "chunk" of metal had broken off from the base of the first post. The cement had to some extent been broken around the flanges of the other posts. The sections of the fence along the passageway were four feet high and weighed in all approximately two hundred pounds.

On the day the boy was injured he was going to the Shawmut Station to meet his aunt and while passing the fence on his right, and about two feet from it, was injured by the fence falling upon him. There was no evidence that he or anyone else had touched it at the time. It appeared that children would sometimes play on the fence and that older boys would sit upon it. People in the vicinity had noticed for a few weeks that the fence would move if one took hold of it and would rock in a stiff wind.

It could be found from the evidence that, if six inches of the end post nearest Melville Avenue had broken off above the ground, the post must have hung suspended on the ends

of the two seven foot pipe rails without other support; that any use of the fence might tend to sway the section from an upright position; and that if it leaned toward the passageway the variation from the vertical would tend to increase in degree and the weight of post and rails would cause the section to fall. In such case the force of its fall could be found sufficient to pull down with it the other sections of which the posts had become loosened in the concrete. A jury would be warranted in concluding that the fall of the fence occurred in some such manner and was attributable to the defective condition of the fence.

It is the duty of a landowner who invites persons to use his premises to exercise reasonable care to keep them reasonably safe for the purpose of the use. *Kelley* v. *Goldberg*, 288 Mass. 79, 81. *LeBlanc* v. *Atlantic Building & Supply Co. Inc.* 323 Mass. 702, 705. It is also the "duty of an owner of land who maintains a wall or other structure adjacent to a public way to persons upon the way . . . to maintain such a structure in a condition that shall be reasonably safe, having regard to its probable deterioration under exposure to air, wind and water, as also to all other lawful attendant conditions which might reasonably be anticipated." *Blanchard* v. *Reynolds*, 236 Mass. 596, 598. *Bernard* v. *Brownell*, 273 Mass. 262, 265. It was for the jury to determine whether the defendant failed in its duty of care to users of its passageway and if the condition of the fence was found due to negligent maintenance whether the injury to the boy was caused by such condition.

*Exceptions sustained.*