**Francis R. BURNS, Plaintiff, Appellant,**

v.

**TURNER CONSTRUCTION CO.,**
**Defendant, Appellee.**

**No. 7134.**

United States Court of Appeals
First Circuit.

Oct. 24, 1968.

See also D.C., 265 F.Supp. 768.

Timothy J. McInerney, Boston, Mass., with whom Charles E. Rendlen, Jr., Hannibal, Mo., and Charles B. Blackmar, Kansas City, Mo., were on brief, for appellant.

Thomas H. Mahony, Boston, Mass., with whom Edward F. Mahony, Boston, Mass., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

During March 1962 plaintiff, Dr. Francis R. Burns, came to Boston to attend a series of lectures given by one Dr. Efron at the Boston Lying-In Hospital. On March 26 after one of the lectures he went to see Dr. Efron at the nearby Children's Hospital where the latter was a research associate. Children's Hospital is, so far as the record shows, an entirely separate entity from Lying-In.

While at Children's plaintiff, in the company of Dr. Efron and another doctor, visited the Ida K. Smith Building. He was not allowed to testify why he had gone to this building but he did testify that he left it with the intention of going to another building at Children's to see a chromosome demonstration.[1]

It happened that at the time defendant, a general contractor, was doing extensive remodeling work in the Smith Building under a contract with the hospital. The building was strewn with contractor's equipment and generally was in a state of disarray.[2]

Upon leaving the Smith Building plaintiff and his companions stepped onto a newly constructed outside platform leading to a stairway. There was a railing along the perimeter of the platform and alongside the stairway consisting of vertical posts as well as two horizontal metal pipes. The pipes opposite the doorway were removable in order to facilitate the delivery of supplies. These removable pipes were designed to be bolted firmly in concave cradles that extended some distance from the upright posts. At this time, however, they were merely lying in the cradles unbolted.[3]

As he was about to descend the stairway plaintiff touched against the movable railing. Whether he backed into it is not clear but at any rate it gave way. When the upper horizontal collapsed, plaintiff reached out with his left hand for the lower pipe. When this too gave way he fell backward to the concrete pavement some five to six feet below, landing on one pipe, the other falling on top of him, and was seriously injured.

He brought this diversity action of tort alleging that his injuries were due

1. Plaintiff testified that this was in connection with the lectures being given at Lying-In.

2. There was testimony that during this period of remodeling doctors used the building periodically.

3. A subcontractor of defendant installed this railing and it is not disputed that the defendant is responsible for any negligence of its subcontractor. There was evidence, however, that when the subcontractor completed its work in February 1962 the pipes were properly bolted.

to the defendant-contractor's negligence. At the conclusion of plaintiff's case the district court directed a verdict for the defendant.

■ The allegations of the complaint and the evidence introduced by plaintiff in support of them raise a question which we think is dispositive of this appeal, namely, the status of the plaintiff at the time and place of the accident. The complaint in three counts charges defendant with mere negligence. Because plaintiff has alleged only ordinary negligence he can prevail only if the defendant owed him an ordinary duty of care. In support of his position that defendant owed him such a duty plaintiff advances two distinct theories: (1) that he was a business invitee and as such was entitled to due care and (2) that defendant being simply a contractor who was on the Children's Hospital premises for private business purposes owes a duty of due care to all who were rightfully there. We shall consider these two contentions in reverse order.

■■ It seems clear that under the law of Massachusetts by which we are bound in this diversity case, a contractor shares the privileges and immunities of ownership in respect to the duty of care owed to licensees. Moore v. Worcester Insulation Co., 338 Mass. 44, 153 N.E.2d 646 (1958); Mikaelian v. Palaza, 300 Mass. 354, 15 N.E.2d 480 (1938).

■ Defendant in the instant case clearly had whatever possession was required to perform its contractual obligation. We need not inquire whether such possession was exclusive inasmuch as in any event the defendant stands in the position of the owner.

"Such possession is of course not adverse to the owner and may not necessarily be exclusive, but it carries with it enough of the privileges and immunities of ownership to place the contractor in the position of the owner with respect to his duty of care toward trespassers or mere licensees coming upon the land."

■ *Mikaelian,* supra at 355, 15 N.E. 2d at 481. Hence, plaintiff cannot prevail if he has a status less than that of a business invitee.[4]

■ We turn now to the crucial question of whether this plaintiff was a business invitee with the right to expect reasonable care in the maintenance of premises or merely a licensee entitled to complain of nothing short of wanton or reckless conduct. See Tomaino v. Newman, 348 Mass. 433, 436 n. 1, 204 N.E.2d 126 (1965); Siver v. Atlantic Union College, 338 Mass. 212, 154 N.E. 2d 360 (1958); Zaia v. "Italia" Societa Anonyma di Navigazione, 324 Mass. 547, 87 N.E.2d 183, 11 A.L.R.2d 1071 (1949); Carroll v. Hemenway, 315 Mass. 45, 51 N.E.2d 952 (1943).

4. Plaintiff cites O'Neil v. National Oil Co., 231 Mass. 20, 120 N.E. 107 (1918) in support of his contention that a contractor who does not have exclusive possession owes a duty of due care to all who are rightfully on the land on which he is working. In that case a maid was injured when she stepped into a hole dug by a contractor engaged by her employer. There was a conflict in the evidence as to whether the maid was on the driveway at the time or had strayed onto the lawn. It is true that certain language in that opinion seems to support plaintiff's position. Thus, "[e]ven if she were on the lawn and not on the driveway and at the time was looking for a pear, the jury could infer that in passing over the lawn, although not invited she was not there unlawfully so far as the defendant was concerned and could recover for its negligence." Supra at 27, 120 N.E. at 109. This passage is less persuasive, however, when read in light of the fact that the defendant requested an instruction that the plaintiff was a bare licensee of her employer if she turned from the driveway and went in search of fruit. The Supreme Judicial Court found no fault with the trial court's refusal to give this instruction. Therefore the passage above cited suggests not that the contractor owed a duty of ordinary care even to licensees, but rather that the maid was perhaps an invitee even if she went upon the lawn. See Cohen v. Davies, 305 Mass. 152, 25 N.E.2d 223, 129 A.L.R. 735 (1940).

In any event, if O'Neil is in conflict with the cases already cited in this opinion, it is clearly superseded by them.

■ Whereas the traditional distinction between invitees and licensees has undergone some erosion in certain jurisdictions, see Rowland v. Christian, Cal., 70 Cal.Rptr. 97, 443 P.2d 561 (1968), it has retained undiminished vitality in Massachusetts. Conklin v. Boston Housing Authority, 1967 Mass.Adv.Sh. 1485, 231 N.E.2d 371 (1967). Further, the standard in Massachusetts for determining the status of a business invitee is a strict one. "There must be a real or apparent intent on the part of the invitor to benefit in a business or commercial sense * * *." *Zaia*, supra, 324 Mass. at 549, 87 N.E.2d at 184. The intent of the invitor must have "a business or commercial significance." O'Brien v. Shea, 326 Mass. 681, 683, 96 N.E.2d 163 (1951). In Belmonte v. Capodilupo, 332 Mass. 134, 123 N.E.2d 376 (1954), it was found that plaintiff's intestate who died as a result of a fall on a defective stairway was in the building as a business visitor of the owner. Still the court held that plaintiff's case must fail because he had not met his burden of proving that the deceased had an invitation to be on the particular stairway when the event in question occurred.

■ We cannot conclude, consistently with the cases above cited, that this plaintiff was a business invitee.[5] His business with Dr. Efron was in the first instance at Lying-In Hospital, not Children's. While the two hospitals may be across the street from each other in a physical sense, we think plaintiff has a very wide street to cross in the legal sense. He attempts to make his way across by assuring the court that Dr. Efron gave her lecture "undoubtedly with the consent and encouragement of her employer," and that the seeking out of the lecturer at her place of employment "is quite usual after lectures, and is invariably welcomed by the lecturer." Without considering whether these statements, if true, would be sufficient to involve Children's Hospital, we note that they are neither buttressed by references to the record nor are they suitable matters for judicial notice.

Further, even if plaintiff were a business invitee as to some parts of Children's, it would not follow that he retained that status during his visit to the Smith Building. See Belmonte v. Capodilupo, supra. The record does not reveal why plaintiff went to this building. While it is not self evident why he should have been allowed to testify as to what he was planning to do after leaving the Smith Building but was not allowed to testify as to what he expected to see in the Smith Building, this is not in issue in this appeal. Thus plaintiff is burdened with the resulting deficiency of proof.[6]

In view of this holding we do not reach the other issues raised in the appeal.

Affirmed.

5. Plaintiff also cites Taylor v. Goldstein, 329 Mass. 161, 107 N.E.2d 14 (1952). This case, however, deals with the problem of passenger guests in an automobile which is a somewhat specialized line of cases. Further, even according to the rule in *Taylor*, the invitee must confer a benefit more tangible than social intercourse, albeit not necessarily of a pecuniary nature. In the absence of evidence to the contrary it is difficult to see how plaintiff here conferred any "benefit", pecuniary or otherwise, on Children's Hospital.

6. We might add that even had plaintiff testified that he went to the building to talk with Dr. Efron about the lecture we would not see how this made him a business invitee of the Children's.